## West Chicago St. R. R. Co. v. Harry Schwartz.

1. STREET RAILROADS—*Duty of the Company.*—A street railroad company is required to exercise ordinary care, to be measured in each case by the apparent situation and dangers naturally incident to the business.

2. SAME—*When the Motorman Sees Persons Approaching the Track.*—When the motorman sees a person approaching the track, he has a right to assume that such person will stop before reaching it. The motorman is not bound to stop his car or slacken its speed in anticipation of such person coming upon the track.

3. SAME—*Preference in the Streets—Duty of Travelers.*—Street railways have a preference in the streets, and while they must be so managed as not to carelessly injure others, travelers must use reasonable care to keep out of their way.

4. SAME—*Duty Toward Children in the Streets.*—The degree of care which is to be exercised to avoid collisions, is such watchfulness and precaution as are fairly proportioned to the dangers to be avoided, judged by the standard of common prudence and experience, and greater vigilance and caution are to be exercised to prevent injuries to children and infirm persons than the law demands for the protection of adults, apparently in the possession of their normal strength and faculties.

**Trespass on the Case,** for personal injuries. Appeal from the Superior Court of Cook County; the Hon. MARCUS KAVANAUGH, Judge, presiding. Heard in this court at the March term, 1900. Reversed and remanded. Opinion filed March 5, 1901.

**Statement by the Court.**—Appellee, a boy aged seven years, was injured, having both his legs cut off, by being run over by one of appellant's electric cars, June 2, 1898, on Twelfth street, Chicago, and began suit by his next friend in the Superior Court of Cook County, to recover therefor, the trial before the court and a jury resulting in a verdict in his favor of $21,000, and a judgment thereon, from which this appeal is taken.

The negligence alleged is that the defendant so carelessly, negligently and wrongfully moved, managed and operated its car that by and through such negligence the injury in question resulted. The plea was the general issue.

Among other instructions for appellee the court gave the following, to wit:

" If the jury find the issues for the plaintiff, then, in determining the amount of damages the plaintiff is entitled to recover in this case, if any, the jury have a right to and they should take into consideration the nature and extent of the plaintiff's physical injuries, if any, shown by the evidence in this case, the pain and anguish which he has suffered or will suffer in consequence of said injury, if any, shown by the evidence in this case, and any and all damages to his person, permanent or otherwise, resulting from said injuries, as the jury may believe, from the evidence before them in this case, he has sustained or will sustain by reason of such injuries, if any."

On behalf of the defendant the court was asked to give, among other instructions, the following, but the court modified the instruction by striking out the words in italics therein, and gave it to the jury as modified, to wit:

" 28.   The jury are instructed that the fact that the court has given any instructions on the subject of the plaintiff's injuries, or that the defendant has introduced evidence on that subject, or that the defendant's counsel has discussed such subject, is not to be taken by the jury *in any degree* as an intimation by the court, or *to any extent* as an admission by the defendant, of the defendant's liability for the injury complained of. *It would be wholly unwarrantable to consider that fact as implying, or intimating in the slightest degree, that the defendant was liable for any injury to the plaintiff.*"

The court also refused to give, at the request of defendant, the following instructions, to wit:

" 32.   The court instructs the jury that street cars have a right of way superior to that of all other persons at all places along their lines, except at street crossings, and that at street crossings the rights of street cars and the traveling public are equal.   And if the jury believe from the evidence that the plaintiff was struck by one of the defendant's cars at some place along its line other than at a street crossing, then the court further instructs the jury that in determining whether or not the said defendant was in the exercise of due care, you should take into consideration the fact that the said defendant had a right of way superior to that of all other persons at all places along its line except at street crossings, together with all other facts and circumstances in evidence.

33. The court instructs the jury that if they believe from the evidence that the plaintiff was suddenly and unexpectedly placed in a position of danger, then in order to charge the defendant with the duty to avoid injuring the plaintiff, the plaintiff must show by a preponderance of the evidence that the circumstances were such that the servant or servants of the defendant had an opportunity to become conscious of the facts giving rise to such duty, and a reasonable opportunity to perform it; and if the jury further believe from the evidence that the circumstances as shown by the evidence did not charge the said defendant with the duty as thus defined, or if the jury believe from the evidence that the defendant did not have a reasonable opportunity to perform such duty, as thus defined, then they should find the defendant not guilty."

The defendant's counsel, at the close of the plaintiff's evidence, requested an instruction to find the defendant not guilty, which was refused, and the same request was renewed at the close of all the evidence and again refused.

John A. Rose, C. Leroy Brown and Louis Boisot, Jr., attorneys for appellant; W. W. Gurley, of counsel.

Francis T. Murphy and Thaddeus S. Allee, attorneys for appellee.

Mr. Justice Windes delivered the opinion of the court.

Appellant's counsel claim a reversal of the judgment in this case on three grounds, which will be considered in their order.

First. It is said that no negligence is shown by the evidence which entitles the plaintiff to a recovery in any event. On this point it seems sufficient to say, and we think that will be sufficiently demonstrated later by what we shall say under the next point, that the evidence presents a question for the consideration of a jury, and that upon the plaintiff's evidence alone, a verdict finding the defendant guilty of negligence, as charged, can not be said to be without support.

Second. The claim is made that the overwhelming preponderance of the evidence on the question of the defend-

ant's negligence is with the defendant, and therefore that the verdict and judgment thereon can not stand.

It appears from the evidence, in substance, that between eleven and twelve o'clock on June 2, 1898, which was a warm, clear and sunny day, plaintiff, with his elder brother, Louis, then aged about nine years, was on his way home from a visit to his cousin, on Eighteenth street, going along the north sidewalk of Twelfth street, near Holden street. At this point the boys were between two viaducts, which cross, east and west, certain railway tracks, running north and south, and the distance between the two viaducts is about 485 feet. The roadway of Twelfth street is thirty-eight feet wide, along which runs the double tracks of appellant's street railway, the one on the north being the west-bound track, and the one on the south being the east-bound track. The distance between the edge of the side-walk to the north rail of the west-bound track is eleven feet, and the distance between that rail and the outside rail of the east-bound track is fourteen and one-half feet. From the east end of the west viaduct eastwardly to Holden street, the distance is 340 feet, and the grade from the end of the viaduct to Holden street is about eight feet, and the grade up from Holden street to the west end of the east viaduct is about six and one-half feet. Holden street is sixty-six feet wide, and from its east line to the west end of the east viaduct is about eighty feet. The gauge of the street railway tracks is four feet eight and one-half inches.

The evidence, on behalf of plaintiff, tends to show that when the boys were at a point west of and near Holden street, they started walking across from the north sidewalk to the south side of Twelfth street, the older one being a few feet in advance of plaintiff; that there was nothing — no wagons, teams, or anything of the kind — in the street at or near the place they started to cross; that the older boy went safely across the street, but that the plaintiff, who was from five to ten feet behind him, was struck by appellant's car as it came down the incline from the west viaduct on the east-bound track, at a speed variously esti-

mated by the witnesses (including those of appellant), some saying the car was going fast, others at full speed, and others at different rates, varying from six to ten miles per hour, without ringing a bell or giving any warning of its approach, and that the motorman began efforts to stop his car from fifteen to twenty-five feet before it struck plaintiff. The plaintiff's evidence further tends to show that there was nothing to have prevented appellant's motorman from seeing the plaintiff and his brother as they were crossing the street from the north sidewalk for a distance of 100 to 200 feet before reaching the point where the accident occurred. The witness Nash, for the plaintiff, on cross-examination, says :

" I couldn't say whether there was or was not a wagon or wagons passing at that particular point. I said that at the top of the viaduct I saw wagons when the car was first striking the incline. I would not say positively whether there were wagons, or not, passing the car at the time."

The evidence of four witnesses for the plaintiff tends to support the state of facts above detailed as to the circumstances attending the accident, though they differ somewhat as to the place of the accident, one placing it west of and near Holden street, another fifteen or twenty feet west of Holden street, a third between eighty and one hundred feet west of the west line of Holden street, and a fourth on the west side of Holden street, and that plaintiff was lying, when taken from under the car, against the step by the patrol box, which appears from the map in evidence made by the surveyor, to be about forty feet west of the west line of the roadway of Holden street and about twenty-five feet westerly of the southwest corner of Twelfth and Holden streets, excluding the sidewalk.

The evidence of five witnesses for defendant, including the motorman and conductor, is to the effect, in substance, that plaintiff and his brother ran from behind a wagon or wagons, which were proceeding west on the west-bound street railway track, or on the street north of that track; went in a southerly direction toward the south side of Twelfth street; that the older boy crossed the east-bound

track safely, but that the plaintiff came upon that track immediately in front of appellant's car, and so close to it that although the motorman set the brakes and did all he could to stop the car, he was unable so to do before it struck plaintiff and injured him.

The motorman testified that he rung the bell from the time his car left the west viaduct until the accident happened. The conductor says as the boys came into view from behind the wagon he " heard the motorman ring the bell. He ' hollered ' and then he set the brakes." The witness Tompkins, says, " As soon as the boy came from between the wagons the motorman, the first thing, rang his bell, and then he went to work and put on his brakes. He put the brake on first." On cross-examination this witness says: " When I first paid attention to the car it was about twenty feet away from the boy. That was when he commenced to ring the bell." He also says that at this time he, witness, was fifteen or twenty feet west of the Pullman building, and that distance from the car; was west of the patrol box, which the map in evidence shows to be in front of this building, and about ten feet east of its west line. The witness Hill, for defendant, who stood at the southeast corner of Twelfth and Holden streets, was not asked as to the bell. Salinger, a witness for the defendant, who was on Twelfth street going west, between the east viaduct and Holden street, on direct examination says: " One of them ran across the street and the other one made an attempt to go over, and heard the sound of the bell. When he heard the sound of the bell he got excited and stopped right there in the car track and looked west. After that the motorman rang the bell again, but it was too late. He was run over." On cross-examination this witness says: " I paid no attention to the noise. After he was struck the little boy ' hollered,' but before he was struck there was no noise that I can remember."

Stevens, a witness for defendant, who says he was at the watering trough in front of the saloon at the southeast corner of Twelfth and Holden streets, on direct examination,

being asked, " What did you hear just before or at the time of the accident?" answered, " I didn't hear anything;" and being asked further, " Did you hear any noise there?" and an objection being made, the court said: " He may state whether he heard any noise or any sound there." The witness then answered, " Nothing, as far as my judgment was concerned; I didn't hear no noise one way or the other." No other witnesses on behalf of the defense testified on the question as to the ringing of the bell or of any warning being given of the approach of the car. The motorman on cross-examination said he was familiar with the space between the two viaducts, knew that "there was a good deal of passenger travel round between these two viaducts," and being asked if he knew that it was " quite a resort for boys there between those two points, for boys to be running across the street and walking across the street," answered, " Sometimes there were and more times not."

The motorman and conductor say—the former, that there was a big line of teams, the latter, that there was a whole string of teams on the west-bound track from the place of the accident up to the top of the west viaduct. Defendant's witness Tompkins only testifies as to two wagons, one behind the other, from between which the plaintiff ran in front of the car. Defendant's witness Hill only testifies as to two wagons being upon the street; that he saw the child between the two wagons, and that he was trying to climb on the rear of a wagon, or getting off; didn't remember just which; that the driver made an attempt to chase him off, or that he turned off of his own accord. On cross-examination this witness says, " I do not remember whether there were any other wagons there or not;" that when the boy got off the rear wagon he hung to the rear of the wagon thirty or forty feet, and when he got off " he started to run across the street from the north. It seems he changed his mind and hesitated a second, and jumped the other way. At that time he was immediately in the middle of the north track. The car was then just coming down the viaduct. * * * When the car was fifteen

feet from the point of collision, it was going full speed, the way they go down there. The boy was then in the middle of the north track—the west-bound track. While the car was going this fifteen feet the boy crossed to the other track." We think this witness makes the strongest showing that the appellant was not negligent, of any of its witnesses, with the exception as to the number of teams and wagons obstructing the street, as testified to by the conductor and motorman. These two witnesses do not differ materially from Hill as to the manner in which plaintiff came upon the east-bound track in front of the car.

The witness Stevens, for the defendant, says there was only one wagon in the street; that " he was sure that was all," and says that it was at a point east of the place of the accident. If his evidence is true, there was nothing in the way of an obstruction between the motorman and the boys. The witness Salinger, for the defendant, testifies to the presence of two wagons in the street, between which the boys crossed the street, but he says they were north of the north tracks. He speaks of no other wagons, and it seems he was not asked as to the presence of any other wagons on the street.

The witnesses for the defense vary quite as much as to the exact place of the accident as those for the plaintiff; some putting it at forty or fifty feet west of Holden street, thus substantially agreeing with two of plaintiff's witnesses, some 125 feet, and one as high as 200 to 250 feet west of Holden street. It appears that the brake on the car was in good order, and the motorman testifies that the rail was a good one to stop a car on, and in its then condition he believed he could stop it at the rate he was running, which he says was seven miles per hour, in between thirty-five to forty feet. He also testifies when the boys first appeared to him, the front end of his car was from fifteen to twenty feet from them; that he set his " brake as quickly as possible and 'hollered.' I stopped the car as quickly as I could," and that the car stopped in less than a car length from the place where the boy was struck; that the boy

West Chicago St. R. R. Co. v. Schwartz.

was running at the time, and that he ran over near the south rail when he was struck. Six witnesses for the defense state that the boy ran across the street, but one of them, Salinger, on cross-examination says :

" They were walking east toward Clark street. One got over. I didn't notice one get over, but the other one got over, just ran, hopping along as a little boy should; by hopping I mean running across slowly; just a little walk. That was the boy that got hurt. That was the kind of walk he was going from the time I saw him leave the sidewalk until the car struck him."

It appears from the opinion of the trial judge rendered in passing upon the motion for a new trial, that he disregarded the testimony of the witnesses Goldstein and Pilate as unreliable, and said that the plaintiff's case should rest upon the testimony of plaintiff's brother and the witness Nash, and that he did not place much reliance upon the testimony of two of defendant's witnesses, Stevens and Tompkins; that no two witnesses in the case gave the same version of the accident, and that it was a close question upon the evidence; but he declined to grant a new trial.

Without further discussion of the details of the evidence, it seems sufficient to say that we have carefully read and considered it, and are of opinion that on the question of appellant's negligence the clear preponderance of the evidence is in favor of appellant, and that a new trial should have been awarded. As we regard it, the clear weight of the evidence is that the little boy ran suddenly from behind a wagon going westerly on the west-bound track immediately in front of appellant's car, which was proceeding easterly at a rate of speed which we think was not negligent in itself, under the circumstances shown, and that after the time the motorman discovered the presence of plaintiff in the street, or by the exercise of ordinary care could have discovered that he was in danger, it was impossible to have avoided the accident. If the testimony of defendant's witnesses is true, the ringing of the bell is of minor importance, as we think it could not be said, even if the bell was not rung, that the failure to ring it was the

proximate cause of the accident. Even if the motorman's view was not obstructed and he saw plaintiff coming across the street in ample time to have stopped his car, he had the right to assume that plaintiff would stop before crossing the track. The motorman was not bound to stop his car or slacken its speed in anticipation that plaintiff might come upon the track. These views are sustained by the following authorities:

In Booth on Street Railways, Sec. 305, the author says a street railway company "is required to exercise ordinary care, to be measured in each case by the apparent situation and the dangers naturally incident to the business. * * Where the alleged negligence consists of an omission of duty suddenly and unexpectedly arising, it is incumbent on the plaintiff to show that the circumstances were such that the servants of the defendant had an opportunity to become conscious of the facts giving rise to the duty, and a reasonable opportunity to perform it. * * * Where he (the driver or motorman) has reason to apprehend danger he should regulate the speed of his car so that it may be quickly stopped should occasion require it."

In speaking on this subject this court said, in Rack v. Ry. Co., 69 Ill. App. 659, affirmed 173 Ill. 289, the motorman "is not obliged to be all the while upon his guard against the not reasonably to be expected, the unusual and extraordinary."

In Fenton v. Ry. Co., 126 N. Y. 625, which was a case of a boy nearly ten years old who ran diagonally across the street on which a horse car was running at the usual rate of speed, about six miles per hour, at a street crossing, stumbled and fell on the track about fifteen or twenty feet in front of the horses, and it appeared the driver applied his brake immediately after the boy fell, and stopped the car as soon as possible, the court held the company was not negligent, and said:

" Street railway cars have a preference in the streets, and while they must be managed so as not to carelessly injure persons in the street, pedestrians must, nevertheless, use reasonable care to keep out of their way."

Also that "if it be assumed that they (the drivers) saw him as he approached the track, they had the same reason to suppose that he would get across, that he had, and he probably would have crossed in front of the horses in safety if he had not fallen."

In Adams v. Nassau Elec. R. Co., 58 N. Y. Sup. 543, a boy five years and eleven months old started to cross the street from the curb, about eighteen feet from the railway track, fifty or sixty feet away from a crossing, when the car was coming thirty-seven to seventy-five feet away, at about six miles per hour, which was its usual rate in that locality, the street being free from vehicles and other obstructions, and the boy, without apparent care as to his surroundings continued on his way across the street and came in contact with the fender or dash-board of the car and was injured. There was a conflict in the evidence as to whether the motorman sounded his bell as he was passing along the street until about the time of the accident. A judgment for the plaintiff was reversed, the court holding that the company was not shown to be negligent, and saying that "the car was not near a street crossing and nothing intervened in front of it which required the ringing of the bell or the application of the brake. The obligation resting on the defendant was to operate the car at this point with reasonable care and prudence. * * * We think the motorman had the right to assume that this infant would not voluntarily leave the walk at the side of the street and deliberately run into the car. Consequently he was not, in the exercise of reasonable and ordinary care, required to operate his car in contemplation of such a contingency. He was undoubtedly required to be upon his guard against the heedless action of immature children, but such reasonable care did not require the assumption that this infant would run into his car. * * * If the motorman had seen the child when it left the curb, that fact would have occasioned no immediate apprehension that it would attempt to cross in front of the car."

Third. We think there was no reversible error in the

rulings of the court upon instructions. It is complained as to appellee's first instruction that it permits a recovery for future suffering, not justified by the evidence, and for mental suffering, not justified by the declaration, nor connected with bodily injury. We think that the proof showing that plaintiff lost both his legs is a sufficient basis for the allowance of damages for future suffering. Common sense and ordinary human experience would lead any reasonable person to the conclusion that such an injury would cause future physical pain. R. R. Co. v. Warner, 108 Ill. 538; R. R. Co. v. Shreve, 70 Ill. App. 666–9.

We do not think the instruction can be said to allow the jury to consider mental suffering as distinct from the bodily injury.

We think there was no error in the refusal of the thirty-second and thirty-third of appellant's instructions. We think the thirty-second was misleading because the question under consideration was not as to the superior right of way of the defendant in the street, but as to whether it was guilty of negligence. The thirty-third instruction we think was properly refused, because it omits the element of negligence of defendant before the plaintiff's presence and position of danger was discovered. We think the modification of appellant's twenty-eighth instruction was entirely proper, but it is unnecessary to decide whether there was error in the failure of the court to entirely obliterate the parts of the instruction which were stricken out by the modifications.

No question is made as to the care exercised by the plaintiff, and we therefore deem it unnecessary to consider his right to a recovery in that regard.

In the foregoing opinion the writer has endeavored to present the substance of this case as it appears from the evidence, without going into a great detail of the evidence, as well as to give the views and conclusions therefrom of the majority of the court. The writer, however, is unable to concur in the conclusion reached by the majority upon the question of the preponderance of the evidence as to the

appellant's negligence, and is of opinion that while the evidence on that point is strongly conflicting, the credibility of the witnesses is one peculiarly for the jury, and if they believed, as the evidence for the plaintiff as well as some of the defendant's evidence tends to show, that there was no obstruction between the motorman and the boys as they walked across from the north sidewalk of Twelfth street toward the south, that no bell was rung or warning of any kind was given of the approach of the car until it was within fifteen to twenty-five feet of plaintiff, then the verdict as to defendant's negligence can not be said to be manifestly against the evidence.  The trial judge, who saw and heard the witnesses, though he was inclined to place very little reliance on the evidence of some of the witnesses both for plaintiff and defendant, after what appears to have been mature deliberation, overruled the motion for a new trial.  This, in the writer's judgment, should have great weight with a reviewing court, and taken in connection with the verdict of the jury and the evidence of all the witnesses, especially the fact that the child was only seven years of age, should result in an affirmance of the judgment.

The writer's view of this case is, in his opinion, sustained by the following authorities, and he thinks the case should not be controlled by the cases noted above, which may be distinguished from the case here.  The principles announced by Mr. Booth, as the writer thinks, when applied to the facts of this case, are not inconsistent with an affirmance.

In Sec. 306 Mr. Booth says :  " According to the general rule, which is sustained by numerous decisions, it is the common law duty of those in charge of a car, and particularly of the driver, motorman or gripman, to exercise ordinary care and diligence to ascertain whether the track ahead is clear, and to avoid striking persons or objects upon or near the track.  He must give the track and street ahead such attention as will enable him, as far as practicable, to know its condition and avoid inflicting unnecessary injury upon others," though the law does not command him " to keep his eyes constantly directed to the track or street in

front of his car. * * * Where it appears that if the
driver had looked in a certain direction he might have
avoided the injury, the question of his negligence should be
submitted to the jury." In Sec. 309, he says : " The degree
of care which should be exercised to avoid collisions is such
watchfulness and precaution as are fairly proportioned to
the dangers to be avoided, judged by the standard of com-
mon prudence and experience. * * * Greater vigilance
and caution should be exercised to prevent injuries to chil-
dren and infirm persons than the law demands for the pro-
tection of adults apparently in possession of normal strength
and all their faculties."

In Sec. 310 he says : " So it is negligence to run over a
child who, although not seen in time to prevent the acci-
dent, could have been seen by the exercise of proper care."

The text above quoted is supported by the cases cited by
the author, as well as the following : Baltimore T. Co. v.
Wallace, 77 Md. 435-41; Ry. Co. v. McDonnell, 43 Md. 534;
Gilmore v. Ry. Co., 153 Pa. St. 31; Schnur v. Traction Co.,
Id. 29; Ehrisman v. Ry. Co., 150 Pa. St. 180-6; Evers v.
Phil. T. Co., 176 Pa. St. 376-80; Riley v. Salt Lake R. T.
Co., 37 Pac. Rep. 681; Strutzel v. St. Paul Ry. Co., 50 N.
W. Rep. 690; Pendril v. R. R. Co., 2 Jones & Sp. (N. Y.),
481; Mallard v. R. R. Co., 7 N. Y. Sup. 666, and cases cited;
Winters v. Ry. Co., 99 Mo. 510-17; Muller v. R. R. Co., 45
N. Y. Sup. 954.

In the Strutzel, case *supra*, a boy about six years old,
while coasting across the street from a vacant lot, which
appears to have been unlawful, ran against the car going
along the street, and was injured, the evidence tending to
show that the car was under control and could have been
stopped in from five to eight feet, but the driver did not
see the boy until he was within seven or eight feet of the
car, too late to prevent the injury, though had he looked
he might have seen the boy, there being nothing to obstruct
his view, and the driver knew that boys had been in the
habit of coasting across the street at this point. It was
held that the driver was negligent in not having seen the
boy, and a judgment against the company was affirmed.

In the Winters case, *supra*, a boy three years of age was run down and injured by a grip car.  The evidence showed that he ran on the track in front of the grip, but the gripman, though he saw the child on the sidewalk, turned his eyes in another direction, seeing the track was clear, and did not see the boy until it was too late to avoid the injury, though it appeared from the evidence of other witnesses that had he looked in the street in front of his train he could have seen the child approaching the track for thirty-five feet before it reached the track.  The question of the gripman's negligence was submitted to the jury and a judgment in his favor sustained by the Supreme Court of Missouri.

In the Muller case, *supra*, a boy about six years of age was injured by being run over by a trolley car going eastward at a point some twenty-five to thirty feet before the car reached a street crossing east of the place of the accident.  He recovered a judgment, which was affirmed in the Supreme Court of New York, all the five judges concurring. The court say :

' "There is testimony tending to show that the car was from fifty to one hundred feet away when the child left the sidewalk, and that the motorman could have seen him, not only when he left the sidewalk, but all the time during which he was approaching the car.  It is true that there is testimony that there was a wagon upon the track which intercepted his view of the child, but this is contradicted, and thus a question of fact was tendered to the judgment of the jury, whether or not there was anything to prevent the motorman from seeing the child in abundant time to avoid running over him.  The evidence as to the unusual speed of the car is not very satisfactory, but it fairly may be inferred that the car was not going at a very high rate of speed, as it stopped in a little more than its own length."

What the speed of the car was does not appear from the report, nor whether the child walked or ran across the street; but it seems the defense insisted that the car ran at an ordinary rate of speed, and that the boy came from behind a wagon on the northerly track and suddenly ran toward the car and was struck by the side of the fender on the car. Nothing is said as to whether any warning was given of the

approach of the car. As will be seen from what has been said of the evidence in the case at bar, it is even a stronger case for the plaintiff than the Muller case. While none of the other cases cited are so close in the facts to the case at bar as the Muller case, they are in some respects similar, and announce principles in harmony with what has been quoted from. Mr. Booth, and the decisions in the Muller, Strutzel and Winters cases; for instance, in the McDonnell case, the Maryland court, in speaking of the duty of a car-driver in a large and populous city, say :

" It is the duty of drivers of cars not only to see that the railroad track is clear, but also to exercise a constant watchfulness for persons who may be approaching the track. Unless he does so, he does not exercise that ordinary care and prudence which the law imposes on him."

In the later case of Wallace, decided in 1893 by the same court, the same rule is applied to gripmen, and the court said it was of the greatest importance to enforce it because of the greater speed that could be attained.

In the Ehrisman case, *supra*, the court, after defining the duty of one crossing the track of an electric railway, says :

" On the other hand, it is the duty of the companies to see that their motormen shall be on the alert, not only at street crossings, but everywhere upon the tracks, to see that citizens are not run down and injured."

In the later case of Evers, *supra*, decided in 1896, the child was four and one-half years old and started from the curb, about seven feet from the track, across the street, not at a crossing, when the car was coming fifty or sixty feet away, running rapidly. The court say :

" Assume, then, although running with comparative rapidity, the car was not running at a negligent and therefore unlawful speed, the question still recurs, did the motorman exercise care according to the circumstances? If the witnesses be believed, he could, by merely looking in front of him, have seen the peril of the child, and could have saved its life by stopping the car."

The court then proceeds to show the similarity of the case to the Schnur case, *supra*.

The writer does not lose sight of the fact that each case

West Chicago St. R. R. Co. v. Schwartz.

of this kind must depend largely upon its own particular facts, and that no rule can be formulated as a guide in all cases, but feels impelled, after the fullest consideration of the evidence, the arguments of appellant's counsel and the views of his associates, to the conclusion stated.

Inasmuch, however, as the majority must and should rule, and has reached a different conclusion from the writer, the judgment is reversed and the cause remanded.

MR. JUSTICE SEARS:

This case does not fall within the class of cases where a child comes upon a railway track and remains there long enough to enable the driver of an approaching car, in the exercise of ordinary care, to see and avoid the peril. The evidence is undisputed that the boy walked or ran upon the track directly in front of the approaching car and was struck at the precise instant he came upon the track. Nor is it a case of an infant upon the street of so tender years as to be presumably unable to care for his own safety.

There is no evidence of negligent speed, or that the motorman was looking elsewhere than straight ahead upon the track and street. It appears from the evidence that the place of the injury was between crossings, and there was no occasion to ring a bell at that place, unless the peril of some one on the street was to be anticipated.

Therefore, the only ground upon which negligence could be imputed to the motorman, and appellant, would be that the motorman was bound to assume that any one passing upon the street and in the direction of the track, might go upon the track directly in front of the car, instead of stopping at the track and waiting in safety for the car to pass. An obligation to so assume and to stop the car upon each like assumption, would preclude travel upon street railways. Whatever may be the rule in other jurisdictions, the law imposes no such obligation under the decisions of this State. Rack v. The C. C. Ry. Co., 173 Ill. 289.

I am of opinion that the evidence fails to establish negligence of appellant.

Reversed and remanded.