MARIA VIZACCHERO *vs.* RHODE ISLAND COMPANY.

PROVIDENCE—SEPTEMBER 21, 1904.

PRESENT: Stiness, C. J., Tillinghast and Douglas, JJ.

(1) *Negligence. Common Carriers. Speed. Duty to Travelers.*

The rule in regard to the speed of an electric car passing along a sparsely settled country road is not the same which applies in the streets of a city. The care to be exercised is relative to the danger reasonably to be apprehended at the time and place; and where the statutes and town ordinances fix no limit to speed, no given rate of speed is *per se* excessive.

(2) *Common Carriers. Speed. Duty to Travelers.*

The duty of a railroad company toward travelers upon its tracks is, not to stop its car when they appear, but to give them sufficient notice of the approach of the car to enable them to leave the track before it arrives. Therefore, the distance at which the warning of an approaching car can be understood by travelers, not the distance which the driver of the car can see ahead, is the standard by which the speed of the car should be regulated.

(3) *Common Carriers. Negligence.*

A common carrier is not guilty of negligence toward a traveler who, while crawling upon the track upon his hands and knees, is struck and killed by an electric car, where the deceased remained upon the tracks after the lights

of the car were plainly visible and the carrier used all means in its power to stop the car after deceased was observed.

(4)  *Negligence.    Contributory Negligence.  ' Electric Railways.*

A traveler who remains upon the tracks of an electric road after the lights of an approaching car are plainly visible, and in consequence is struck and killed, is guilty of such contributory negligence as will bar recovery.

TRESPASS ON THE CASE for. negligence.   Heard on petition of defendant for new trial, and judgment for defendant.

DOUGLAS, J.   This action is brought to recover damages for the death of the plaintiff's intestate, who was struck and mortally wounded by one of the defendant's electric trolley cars, which was coming towards the city, in the town of Johnston, about eight o'clock, P. M., March 8, 1903.

The place where the accident occurred was on Atwood avenue, a thinly settled country road fifty feet wide, having the car track located along one side, next to the sidewalk, leaving about thirty feet of unoccupied highway.   The evening was dark and stormy, and the headlight and other lights of the car were lighted, and a person on the track approaching the place of the accident, and facing towards the car, had an uninterrupted view for at least eight hundred feet.   The headlight enabled the motorman to distinguish objects upon the track within a distance of about twenty-five feet.

A witness, who, with his wife and child, were the only passengers on the car, testifies that the car, at the time of the accident, was going, as he thinks, at the rate of twenty miles an hour.   In cross-examination, he admits that he could not see through the windows, which were obscured by the weather; that his attention was taken up by the child, with whom he was playing, and that his estimate of the speed of the car was merely a guess.   The motorman and conductor testify that the car was going at the rate of from nine to twelve miles an hour, as was customary at that place.   The motorman testifies that, looking carefully ahead, he first saw the intestate on his hands and knees, upon the track, facing the car, about twenty-five feet away;   that he immediately applied his brake and reversed the power, but, notwithstanding these efforts, which were all that he could make, the car struck the man,

threw him to one side of the track, and stopped about twenty feet further on.

It appeared, from the evidence of the physicians who examined the plaintiff's intestate at the hospital, that he had been drinking spirituous liquor, but there is no direct evidence that he was intoxicated. He had been seen, shortly before the accident, walking in his usual manner on the road.

Jury trial having been waived, the case was tried before a single judge in this Division, who decided that, while the plaintiff's intestate was negligent in approaching the car as he did, the defendant's servant was negligent in running the car so rapidly that, with the appliances at his command, he could not stop the car after the man was distinguishable by the headlight. And his conclusion was that the negligence of the defendant was the proximate cause of the accident. He therefore decided in favor of the plaintiff, and assessed the damages at $5,000.

We think the learned judge erred in his finding that the defendant's servant was guilty of neglect of duty, and also in finding that the intestate's negligence was not the proximate cause of the accident.

(1)    The duty of the driver of an electric car, passing along a sparsely settled country road in the space between intersecting roads, is not to be judged by the same rules with regard to speed which apply to the same car passing along the crowded street of a city. The care to be exercised is relative, and must be proportional to the danger reasonably to be apprehended at the time and place. *Stelk* v. *McNulta*, 99 Fed. Rep. 138. The popular demand for electric cars rather than horse cars or omnibuses prevails at the present day because the former can carry more passengers, and at a more rapid rate, than the latter. In order to serve the public, these cars must be propelled as rapidly as safety will permit; and on long stretches of country road, where the statutes and town ordinances fix no limit to their speed no given rate of speed is *per se* excessive. *Kline* v. *Traction Co.*, 181 Pa. St. 276.

(2)    The duty of a traveler upon an unimpeded country road is to yield the use of the railroad track to an approaching car. The willful and malicious obstruction of a street railway com-

pany in the use of its tracks is punishable as a misdemeanor. Gen. Laws cap. 279, § 65. The car can not turn out, and so the traveler must. The conduct of the operator of the car may be lawfully predicated upon the expectation that the traveler will observe his duty in that regard.

The duty of the railroad company towards such travelers is, not to stop its car when they appear, but to give them sufficient notice of the approach of the car to enable them to leave the track before the car arrives. *Terre Haute R. Co.* v. *Graham,* 46 Ind. 239–245; *W. Chicago St. Ry. Co.* v. *Schwartz,* 93 Ill. App. 387; *McQuade* v. *Met. St. Ry. Co.,* 17 Miscel. 154. If the car is going only at such speed as will give a traveler ample time to leave the track, after he sees the light or hears the signal of the car, before the car reaches him, he has nothing to complain of. It is not running at excessive speed with regard to him. *Bethel* v. *Cinn. St. Ry. Co.,* 15 Ohio C. C. 381, 8 Ohio C. D. 310. It is, therefore, plain that the distance at which the light of the car can be seen or the bell or whistle can be heard and understood by travelers, so as to enable them conveniently to leave the track—not the distance that the motorman can see ahead—is the standard by which the speed of the car should be regulated. As it is not the duty of the car to stop within the limit of the illumination of the headlight, its speed need not be restricted to the rate prescribed by such a necessity. Such a general rule as that which the court announced is neither necessary nor reasonable as applied to the locality in question.

(3) In the particular circumstances of this case we are unable to see that the defendant's servant was guilty of any negligence. Negligence is the failure to provide for some condition or event which may reasonably be expected; and the motorman in this case, in the place where he was going, had no reason to expect that any pedestrian would remain upon the track after the lights of the car were plainly visible. Certainly he had no reason to anticipate that he would encounter a human being upon the track, crawling towards the car upon his hands and knees, and it was not his duty to run his car so as to provide for such a contingency. After the man was seen, it is not

suggested that the motorman was guilty of negligence, as he used every means in his power to stop the car before the collision. *Stelk* v. *McNulta*, 99 Fed Rep. 138; *Murray* v. *42nd St. Ry. Co.*, 41 N. Y. Sup. 620. It may be added, also, that there is no evidence that upon the wet and slippery track the car could have been stopped in time if it had been proceeding at a very moderate rate of speed.

(4)    Again, the court erred in holding that the plaintiff could recover, notwithstanding his own negligence. The doctrine of proximate cause, sustained by a long series of decisions following *Davies* v. *Mann*, 10 M. & W. 546, as we have adopted it in this State, is clearly stated in *Mahogany* v. *Ward*, 16 R. I. 479, and *Prue* v. *R. R. Co.*, 18 R. I. 360.

The plaintiff's counsel cites many cases in support of his contention that this case is governed by the rule. Some of the cases cited make, as it seems to us, quite unwarranted applications of it, to the extent almost of making a railroad company responsible for damages to the heirs of a suicide, but none go so far as would be necessary to absolve the plaintiff from contributory negligence in this case. Taking the words of Baron Parke in *Davies* v. *Mann*, "the negligence which is to preclude a plaintiff from recovering in an action of this nature must be such that he could by ordinary care have avoided the consequence of the defendant's negligence," as a guide, it is plain that the plaintiff can not recover; for her intestate, by ordinary care, could have avoided the car, which was visible at a distance of eight hundred feet, no matter how fast it was going. It was just as much the duty of the plaintiff's intestate to avoid the consequences of the defendant's negligence, if there was any, as for the defendant's servant to avoid the consequences of the intestate's negligence, if by any care and foresight he could have done so. The intestate's negligence was not remote in point of time, but continuous and coefficient with the act of the company. The court says, in *O'Brien* v. *McGlinchy*, 68 Me. 552, 558: "But this principle would not govern where both parties are cotemporaneously and actively in fault, and by their mutual carelessness an injury ensues to one or both of them."

In *Isbell* v. *N. Y., N. H. & H. R. R. Co.*, 27 Conn. 393, it is said: "The negligence of the plaintiff, if there has been any, was not the proximate cause of the accident. To be so it must have been simultaneous in its operation with that of the defendant, of the same kind, immediately growing out of the same transaction and not something distinct and independent of a prior date, remotely related to the negligence of the defendant.

In the case of *Prue* v. *R. R. Co.*, 18 R. I. 360, the victim was proceeding to extricate himself from the danger, and could have escaped but for the independent mistaken act of the gateman after he saw the position of the traveler. If the traveler had remained upon the track, with the gates open, the case must have been decided differently.

In one of the most reliable text-books on the subject of negligence, the rule, as formulated by a writer in the Quarterly Law Review, vol. II, p. 507, is adopted as follows: "The party who last has a clear opportunity of avoiding the accident, notwithstanding the negligence of his opponent, is considered solely responsible." 1 S. & R. Neg., § 99.

The negligence of the plaintiff's intestate did not consist in walking upon the track, which he had a right to do until the car approached, but in remaining upon it after the car was plainly visible; and this negligence continued until the car struck him. The opportunity for him to escape began when he could have seen the car eight hundred feet away, and only ended a few seconds before he was struck. His neglect of this opportunity, as much as the approaching car, caused the accident.

In *Randall* v. *Union R. R. Co.*, Ex. No. 2356, Apl. 6, 1898, we held that a nonsuit was properly granted where it appeared that the accident was caused by the failure of the plaintiff seasonably to turn off of the track after the car had reached a point where it could have been seen, or by the slipping of the horse on the hard snow.

It has been held that a person riding between the rails of an electric street railway upon a bicycle has the duty to look out for and endeavor to avoid danger from the electric cars, and the

negligence of a bicycle rider who continued to ride on the track of an electric car up to the very moment when he was struck, when by the slightest care and effort on his part he could have put himself out of danger up to the last moment, is a contributing and efficient cause of the injury which precludes the conclusion that the negligence in managing the car was later in time and therefore the proximate cause of injury. *Everett* v. *Los Angeles Consol. Elec. R. Co.,* 115 Cal. 105, 127.

The duty of a pedestrian is the same, and his opportunity is as great; and so it is clear that the contributory negligence of the plaintiff's intestate was a proximate cause of his death.

In *Ormsbee* v. *B. & P. R. R. Co.,* 14 R. I. 104, it was held to be contributory negligence on the part of a deaf mute to cross a railroad track without looking for an approaching train, and that his administratrix could not recover, though the train gave no signal as it should have done.

A very instructive case, though not presenting the same facts affecting the question of the defendant's negligence as the case at bar, is *State* v. *United Rys. & Elec. Co. of Baltimore,* 54 Atl. Rep. 612, 613. The care required of one who attempts to cross the track of an electric road in the open country is strongly insisted upon. The case is directly in point on the question of contributory negligence. The court say: "It is evident from all the evidence, that we have here . . . a rapidly approaching car in the sight of the traveler, who, in spite of the fact that he saw it, drove leisurely on the track, and was run over and killed. It is conceded, of course, that the defendant was negligent in failing, perhaps, to give signals, and in running at a higher rate of speed than was allowable; but under all the authorities such negligence of the defendant does not palliate or excuse the negligence of the plaintiff," citing *Keenan* v. *Union Traction Co.,* 202 Pa. St. 107.

So in *Gilmore* v. *Passenger Ry.,* 153 Pa. St. 31, it was held that "a person is guilty of contributory negligence who leaves a horse and wagon unguarded upon the track of an electric street railway, in a narrow and unlighted alley on a dark night, and he can not recover for injuries to the horse and wagon, although the railway company was also negligent in running

the car at a rate of speed that did not permit its stoppage within the distance covered by its own headlight.  The court say:  "It is an unbending rule to be observed at all times and under all circumstances that a person about to cross the track of a street railway must look in both directions for an approaching car before attempting to cross.  *Ehrisman* v. *East Harrisburg Passenger Ry. Co.*, 150 Pa. St. 180;  *Wheelahan* v. *Phila. Trac. Co.*, 150 Pa. St. 187.  But compliance with this rule would be an idle ceremony, if a person might afterwards stop his horse or vehicle upon the track, relax his vigilance, and, leaving his horse unguarded, go into a building in the vicinity and there remain any length of time whatever."  And the judgment for the plaintiff was accordingly reversed.  See also, to the same effect, *N. Y. Condensed Milk Co.* v. *Nassau Elec. Co.*, 60 N. Y. Sup. 234.

If the plaintiff's intestate had impaired his ability to take care of himself by getting intoxicated, that fact in no wise affects the case.  Intoxication does not relieve a man from the degree of care required of a sober man in the same circumstances.  *Chicago Ry.* v. *Lewis*, 5 Bradw. (Ill. App.) 242; *Bageard* v. *Consolidated Traction Co.*, 64 N. J. L. 316.

In *Bugbee* v. *Union R. R. Co.*, Ex. No. 3348, April 8, 1904, the plaintiff was walking upon the track, intoxicated, when he was struck by an electric car, and the court considered him culpably negligent.

As the record presents all the evidence attainable, and it conclusively appears that the plaintiff's intestate has no cause of action against the defendant, judgment will be entered for the defendant.

*Livingston Ham and Lewis S. Thompson,* for plaintiff.

*Henry W. Hayes, Frank T. Easton, and Lefferts S. Hoffman,* for defendant.