ALBERT PASTERNAK, Respondent, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY CO., and JOHN J. McKINNEY, Appellants.

Kansas City Court of Appeals, May 19, 1913.

1. **NEGLIGENCE: Railroads: Duty to Stop and Signal at Railroad Crossing: Violation of Speed Regulations.** It is the duty of an engineer in charge of a train approaching the crossing of another railroad in the city limits to stop and give the signal as required by statute, and to ring the bell and to observe the speed limits imposed by ordinances, and where a failure to observe these regulations is the proximate cause of a collision and injury on said crossing, the railroad violating them is liable.

2. ————: ————: **Warning: Application of Rule.** The rule that a railroad is under no duty to warn a railroad man of the approach of a train unless he is seen to be in danger and oblivious to it applies only to those who are servants of that particular railroad. The rule does not apply to section men working for another railroad and travelling thereon over the crossing. Such workman is a stranger to the other road and has not agreed to look out for his own safety to the extent of assuming all risk of negligence on the part of such other road.

3. ————: ————: ————: **Proximate Cause.** Where a section hand was approaching a railroad crossing on a hand car at a moderate rate of speed watching and looking for the approach of trains, and the moment he saw the engine, attempted to work the brake but was unable to work it effectively enough to stop the car before it reached the crossing, and the evidence showed he could not see an approaching train until 41 feet from the crossing, and that the engine had not stopped or signalled for the crossing, but was running in excess of the speed allowed, it cannot be said as matter of law that the failure of the brake on the hand car to work properly was the proximate cause of the injury even though the car could have been stopped in less than 41 feet if the brake had worked.

Appeal from Buchanan Circuit Court.—*Hon. Wm. D. Rusk*, Judge.

AFFIRMED.

*John E. Dolman* for appellants.

*Mytton & Parkinson* for respondent.

TRIMBLE, J.—In this case an employee of one railroad sues another railroad for damages caused by being run over by a freight train of the defendant at the crossing of the two roads.

Plaintiff was returning from his work as a section hand on the Burlington road riding on a hand car, and was on his way to the tool house to put away the hand car and tools. The defendant Rock Island railroad runs south along and about the middle of Eighth street in the city of St. Joseph. The Burlington railroad comes from the east on Renick street till it reaches Ninth street (the next street east of and parallel to Eighth), and there the railroad makes a sharp turn to the southwest and crosses Eighth street at an angle of about forty-five degrees. From the point where the north line of the Burlington railroad crosses the east line of Eighth street to the crossing of the two railroads is about forty-one feet, and from the point of intersection of the Burlington north track with the east line of Eighth street directly west to the Rock Island east track is thirty-one feet. In the angle formed by the east line of Eighth street and the west or north line of the Burlington track were a number of sheds and a tall growth of weeds which entirely obscured the view of persons walking down the Burlington track or riding on a hand car, until they crossed the east line of and emerged into Eighth street.

As intimated above, plaintiff was a section hand not in the employ of the defendant but in that of the Burlington. He had worked for the Burlington for seventeen years, but, until two days before the injury, his place of work had been elsewhere on the main line, and he had not been at the crossing above mentioned more than four or five times in two years previous to the injury and was not much on the track in question during the seventeen years.

On the evening of August 15, 1911, plaintiff was on the right side of the hand car proceeding southwest over the Burlington track and approaching the Rock Island crossing. He was standing between the front and rear handles with his hands on the front handle helping to work them up and down and thus propel the car. His foot was on or near the brake. From the Burlington's intersection with the east line of Eighth street back northwest up the track for a distance of 250 feet, it was impossible to see a train coming from the north on the Rock Island track. The hand car was proceeding along this portion of the track about four or five miles per hour, and the plaintiff was pumping the hand car and looking and listening for whatever might be on the Rock Island track. As the hand car emerged into Eighth street and came from behind the weeds and houses, at a point about thirty feet from the nearest point on the Rock Island, an engine was seen backing south on the Rock Island pulling a train of cars. Both hand car and engine were moving in the same general direction to the crossing. The plaintiff attempted to use the brake but for some reason it would not work, and the hand car could not be stopped, though if the brake had been working, the car could have been stopped in from twenty to thirty-seven feet. When plaintiff discovered the car could not be stopped and the engine was going to strike it, he jumped in the only direction possible by reason of the handles and machinery of the car. He was knocked down and run over by the engine. There was evidence that no stop was made for the crossing, that no whistle was blown upon the engine as it approached the crossing, no bell sounded and that the train was running from eighteen to twenty miles per hour in the city limits, all in violation of the city ordinances pleaded and proved. The rate of speed, the absence of bell ringing and the failure to blow the whistle were testified to by plaintiff and also by Reuben Marks,

an engineer for the Burlington, who was walking down Eighth street and saw the train as it went down to the crossing. J. B. Garver, a locomotive fireman, who had just gotten a can of oil from the oil house on the west side of eighth street just west of the crossing, testified to the same effect except that just before the engine struck the car, when it was right upon it, the engine gave four short blasts of the whistle. The evidence of the train employees was that the engine was going about four miles per hour, with bell ringing and whistle blowing. And this was corroborated to some extent by a negro woman who lived in a shanty in the angle, and who said the train was coming pretty fast but that it whistled for the crossing, and that when it did so, the men on the hand car tried to beat it to the crossing. She says she heard no bell.

As a result of the collision plaintiff's leg was crushed, necessitating its amputation, his arm crippled and his scalp cut open from some portion of his crown down to the eyebrow. He was in the hospital something over forty-three months. The jury returned a verdict for $5000.

It is urged that a demurrer to the evidence should have been sustained. That, as plaintiff was a section hand, defendant owed him no duty to look out for him or to give him warning except where he is actually seen to be in peril and oblivious to danger. But this overlooks the fact that in this case plaintiff was not a servant of defendant. He was a stranger. The mere fact that his business happened to be that of a workman upon a railroad would not relieve defendant of the duty to stop and whistle for the crossing, or to ring the bell, or to observe the speed ordinances. The duty to do these things was imposed upon the defendant for the benefit of those likely to use the crossing whether they be priest, prophet, saint or devil. Their calling in life could make no difference. In fact, being a railroad man, the plaintiff would be more apt to know of

Pasternak v. Railroad.

the requirements of the law concerning the way defendant should approach the crossing and more confidently expect them to be obeyed. Though of course he could not neglect all precautions for his own safety and trust wholly to the observance of such requirements to protect him. The basis for the rule that no duty to look out for or to warn a servant workman unless he is actually seen to be in danger and oblivious to it, lies in the fact the servant is presumed to be familiar with the operation and passing of trains, and by accepting employment in the business agrees to look out for his own safety. His duty also requires him to do his work in a place of danger and it would greatly interfere with the master's business if the latter were required to stop or give the same warning he is required to give others. The rule is not in any other manner or degree based on the *occupation* of the person in need of the warning. It is the relation he sustains to the master and the work and his necessary knowledge of it and of his own duty to look out for himself, that gives rise to the rule. Hence the cases cited, announcing the rule with reference to a servant, are not applicable to this case.

The point is also made that the failure of the brake on the hand car to work properly was the cause of the injury. The jury, however, found that the failure of defendant to stop for the crossing, to whistle, or to ring the bell, and the high speed, were the proximate causes. The fact that the brake did not work effectively may not have enabled the plaintiff to escape the results of defendants' negligence, but the latter, and not plaintiff's inability to escape, was the proximate cause of the injury. The contradictions and difference between the evidence offered in behalf of plaintiff and that introduced by defendant were matters for the jury to settle. We must take its judgment as to which side was right. Hence the judgment is affirmed. All concur.