# Cincinnati, New Orleans & Texas Pacific Railway Company v. Jones' Administrator.

(Decided June 16, 1916.)

## Appeal from Lincoln Circuit Court.

1. Railroads—Operation—Duty to Keep Lookout.—Although, ordinarily, the duty of keeping a lookout, holding the train under control, and giving warnings of approach is not required of train men for the benefit of those employes of a railroad, whose duties are to keep the track clear for the passage of trains, and to know the time of the arrival of trains, as it is their duty to watch for the trains and to keep out of the way, but where a warning has been given train men to proceed with the train under control, reduce the speed and to proceed with caution, it is their duty to do so, and to ignore such a warning is evidence of negligence and indifference to consequences.

2. Master and Servant—Assumption of Risk.—If a section hand, with the knowledge of the approach of a train, and in a safe place, with full appreciation of the danger of so doing, voluntarily attempts to cross the track in front of the engine and takes his chance of so doing, he assumes the risk of the danger of such attempt, and the railroad is not liable for his death.

3. Master and Servant—Assumption of Risk.—If a section hand goes into a dangerous place by the order of his foreman, who is his superior and whose order it is his duty to obey, and in the course of his employment, does not assume the risk of the danger of such place, unless the danger of obeying such order is such, that no prudent man would do so.

4. Master and Servant—Assumption of Risk.—If, through the negligence of an employer, an employe is placed in a dangerous place, where it is necessary for the employe to act immediately for his safety, and he acts as an ordinarily careful man would, in like circumstances, he is not chargeable with having assumed the risk for having mistaken the unsafe course for the safe course to pursue to a place of safety, nor is he guilty of contributory negligence in having made the mistake.

K. S. ALCORN and JOHN GALVIN for appellant.

ROBERT HARDING, GEORGE D. FLORENCE and E. V. PURYEAR for appellee.

OPINION OF THE COURT BY JUDGE HURT.—Reversing.

This action was instituted by the appellee, the administrator of George Jones, deceased, against the appellant, Cincinnati, New Orleans and Texas Pacific Railway Company, to recover of appellant damages for al-

leged negligently running one of its trains against Jones and causing his death. The action was brought and the recovery sought under the provisions of the Federal Employers' Liability Act. At the time he was struck by the engine of the train and killed, Jones was an employee of the appellant, and was engaged, along with others, under the direction of a foreman, G. T. Hicks, in repairing the tracks of appellant's railroad at a point in Kenton county.

The appellee alleged that the death of Jones arose from the negligence of other employees of appellant, while the appellant denied any negligence upon its part and relied upon the alleged contributory negligence of Jones in diminution of damages, and, also, plead that the negligence of Jones was the sole and only cause of his death and that his death was not caused in whole or in part by any negligent act upon its part. At the close of the evidence offered by appellee and at the close of all the evidence, the appellant moved the court to peremptorily direct a verdict in its behalf, but these motions were overruled by the court. The appellant offered two instructions, which were refused. The appellee moved the court to peremptorily instruct the jury to return a verdict for him, and offered instructions, one of which directed the jury to find a verdict for him. The court refused the instructions offered by appellee, and then upon its own motion and over the objection of appellant, gave to the jury five instructions. By the first of these, the jury was peremptorily directed to find a verdict for appellee, and contained directions as to the measure of damages. The second instruction related to the duty of the jury as to apportioning the damages found between the widow and dependent children of Jones. The third instruction related to the duty of the jury if it found that Jones was guilty of any negligence, which contributed to his death. The fourth instruction defined negligence, as used in the instructions. The fifth instruction directed the jury, that as many as nine of its members concurring, it could find a verdict, and the form of the verdict, if all the jury should agree, and its form, if less than the whole number, but as many as nine of the members, should agree.

The jury returned a verdict for appellee, and the court rendered a judgment in conformity therewith. The appellant seeks a reversal upon the following grounds,

which it assigns as errors: (1) The court overruled its motion for a direct verdict.

(2) The court refused to give an instruction, which was offered by it, basing a defense upon the decedent having assumed the risk of doing the acts, in which, he was engaged, at the time he was struck by the train.

(3) The court decided as a matter of law, that the proven negligence of appellant, in whole or in part, caused the death of decedent, and peremptorily instructed the jury to return a verdict for appellee.

(4) The court erred in defining the measure of damages.

(5) The instruction upon contributory negligence was erroneous and prejudicial.

The facts and circumstances, which resulted in the death of decedent, appear to be as follows:

G. T. Hicks was the foreman of a gang of men, of whom deceased was one, and who were engaged in the work of repairing the tracks of appellant's railroad where it passes through Kenton county. The particular work in which they were engaged was that of "spacing ties," and to enable them to elevate the rails when necessary, two appliances which were called "jacks," were in use. The "jacks" were made of iron and were about eighteen inches in height and weighed from fifty to seventy-five pounds, and a part of it consisted of a lever about five or six feet in length, which worked in notches. The "jack" was placed against the rail, and by the mechanism of the lever, the rail was elevated to the point desired. In the progress of their work upon the occasion of decedent's injuries, the "jacks" were placed against the rails upon each side of the track and the rails elevated about three inches. At the point where the "jacks" were situated, upon the east side of the track, an embankment arises, which is from fifteen to forty feet in height, according to the opinions of the different witnesses. Between the ends of the crossties, upon the east side of the track and the embankment, there was a shallow ditch, about eighteen inches in depth and variously estimated in width. Between the ends of the ties, upon the east side of the track, and the foot of the embankment, the distance is stated by the various witnesses to be from two and one-half feet to eight feet. On the west side of the track, upon which they were at work, was another track. The one upon which the repairs were being made with the track over

which appellant ran its trains which were north bound. Early on the morning of the day upon which deceased was killed, the foreman of the gang of workmen, Hicks, placed a green flag upon the east side of the north bound track, about one mile to the south of where the repair work was being done. This was a warning to the engineers of north bound trains to be on the lookout and to keep their trains under control and to proceed with reduced speed, so as to enable them to protect the train and passengers against any danger that may be upon the track in advance of the train. The tracks from the south to the north were upon a declining grade, and south of the point where decedent and his companions were working, there was a curve in the course of the track, which prevented persons, at the place, where the decedent was, from seeing the approach of a train from the south, until the engine should arrive at a point about three hundred feet distant, nor could those upon the train see the presence of persons upon the track where decedent was at work sooner than when at that distance. About half after seven o'clock, in the forenoon, a passenger train came from the south, moving at a speed of from twenty-five to thirty miles per hour, and gave no warning of its approach to where the decedent was at work, either by whistle or bell. Several of the witnesses, who were of the section gang and at work along with the decedent, testify, that they did not know of the approach of the train until they saw it about nine rails length or three hundred feet away. The foreman testifies that he was standing upon the track near to where decedent was at work, and that he heard the approach of the train and became aware of its coming before it came in sight. At this time the decedent was clear of the track, but upon the east side of it, between the track and the embankment. The foreman immediately called out to the men, that "something was coming," and to get the "jacks" out of the way. An employee, whose name was Seward, ran to the "jack" that was against the west rail of the track, and at the same time, the decedent ran to the one which was against the east rail of the track, and each of them seized the lever to the "jack" at the respective point and undertook to disengage and remove it. Seward did not succeed immediately, and the foreman went to his assistance and removed the "jack" into the space between the tracks. The foreman then discovered that decedent was having trouble with removing

the "jack" at which he was working. The mechanism, in some way, did not work. The decedent was standing on the east side of the track at the end of the crossties, and endeavoring to work the lever so as to disengage the "jack" and to remove it, but seemed to be excited and did not succeed. The foreman ran across the track from the west side of it to where decedent was on the east side, and called to decedent to get out of the way and permit him get the "jack." The decedent was standing with his back to the approaching train and did not heed the order of the foreman until the foreman said to him to get out of the way and let the train knock it out. The train was then very near when decedent released the lever of the "jack" and jumped over onto the track in front of the engine and undertook to run across the track to the west side, in front of the engine, which struck him and knocked him from the track. He fell upon the west side of the track in an unconscious condition, and died within a short time. The "jack" was struck by the engine and knocked to a distance of fifteen feet, to a point on the east side of the track, and north of where it was struck. The foreman and others of the gang stood upon the east side of the track and were unharmed by the passing train, while others moved to the west side when the train passed by. The train was stopped within a distance of about eight hundred feet from where it struck decedent, with the south end of the train from one hundred and fifty to three hundred feet north of that point.

(a)    The appellant insists that the instruction asked for by it, which peremptorily directed the jury to find a verdict for it, ought to have been given, because, as it insists, there was no negligence proven, of which it was guilty, which resulted in Jones' death. It may be conceded that it is a well established rule of the law of negligence, that before a recovery can be had for an injury suffered, it must be proven that the injury was caused by proven negligence of the person who is charged with the negligence. The contention that there is a failure of proof of any negligence on the part of appellant, which in whole or in part caused the injury to decedent, is based upon the theory that Jones was a section hand, whose duty it was to watch for the trains upon the road, and keep out of their way, and to keep the track clear of obstacles, which might interfere with the safe passage of the trains. It is true, ordinarily, that the employees of a railroad,

who are engaged in operating the trains, do not owe any duty of keeping a lookout, nor of giving signals of approach nor of reducing the speed of the trains in anticipation of finding upon the track the employees whose duty it is to keep the track in condition and free from obstacles, which might endanger the safety of the trains, and to watch for and know the time of the passing of the trains. To such employees, the train men owe the duty of exercising ordinary care to prevent injuring them when they are discovered in situations of danger, only. M. & O. R. R. Co. v. Dowdy, 28 R. 1370; C., N. O. & T. P. Ry. Co. v. Harrod's Admr., 132 Ky. 445; Blankenship's Admr. v. N. & W. R. Co., 147 Ky. 260; Coleman v. Pittsburg Ry. Co., 139 Ky. 559; Cunniff v. L. H. & St. L. Ry. Co., 124 Ky. 763; L. & N. R. R. Co. v. Hunt, 142 Ky. 778. While the train men would not ordinarily be required to reduce the speed of a train on account of the knowledge that track repairers were at a designated place, or to give warnings of the approach of the train, as they could safely assume that the repairers of the track, whose duty it was to keep the track clear, would be on the lookout for the train and would get out of the way of it, but upon the same principle, that it would be the duty of the trainmen, if they should see the track repairer upon the track, and under circumstances which indicated that he did not know of the approach of the train, and on that account was not going to get out of the way, to give him warning of his danger, and to do whatever it reasonably appeared to be necessary to save him from injury, which could be done; it seems that ordinary prudence would require of trainmen, when they had received a warning that there was such a situation immediately in front of them upon the track, that the train should be under control, and to proceed with reduced speed and with caution, they should heed such a warning. To entirely ignore such a warning, would indicate recklessness and indifference to consequences, including the safety of others. It does not appear that the engineer had any knowledge of the presence of the section hands upon the road at the point where they were, but he should have operated the train cautiously, kept a lookout and the train under control, so as to have been able to have stopped it if the necessity appeared. If he had done so, and had been proceeding with but a little less speed, the "jack" could and would have been removed and no one endangered or hurt. The de-

cedent, when directed by the foreman to remove the "jack" upon the east side of the track, could and would have done so and taken himself safely out of the way. While, as stated, ordinarily the speed of the train does not have to be reduced in anticipation of section men being upon the track, because it being their duty to keep the track clear and to keep out of the way, as it can be assumed that they will do so, but where a warning is given, as in this case, for the train to approach at a reduced rate of speed, it is evidence of negligence if the warning is ignored. I. C. R. R. Co. v. Evans, 169 Ky. 536; L. & N. R. R. Co. v. Sewell, 142 Ky. 171. The evidence that the train approached around a curve at from twenty-five to thirty miles per hour, and although the decedent could have been seen for three hundred feet before the engine came in contact with him, there was no diminution of the speed until he was killed. Hence, there was evidence tending to show negligence upon the part of appellant in operating the train at such a high rate of speed that decedent, in his endeavor to escape to a place, which he deemed to be safe, was overtaken and killed.

It is, further contended that, however negligent the appellant was in the operation of the train at an excessive speed after having received the warning, that such negligence was not the proximate cause, in whole or in part of the death of decedent, and for that reason that the direct verdict sought by appellant should have been ordered. It is contended that decedent was in a place of safety when the train came in sight; that he knew of the approach of the train, and that when he left his place of safety and went to the place of the "jack" and attempted its removal, that he did that which a prudent person would not do under the circumstances, and hence assumed the risk of all the danger which attended his action, and that he thereby placed himself in a position of peril through his own fault and not through any negligence of appellant, and that when directed to get out of the way and to let the train knock the "jack" away, that, fully knowing and appreciating the danger of attempting to cross the track in front of the engine, that instead of stepping one step to the eastward to a place of safety, he voluntarily chose to take the chance of attempting to cross the track to the west side, and thus assumed all the risks of the dangers of so doing, and hence his death resulted from his own negligence, alone, without any co-

operation with any negligence of appellant. These con-
clusions, however, from the facts proven do not follow,
as a matter of law. He went to the place where the
"jack" was and attempted to remove it at the peremp-
tory behest of the foreman, who was his superior in au-
thority and whose orders it was his duty to obey, unless
the danger of so doing was so obvious and apparent that
a man of ordinary prudence would, under like circum-
stances, have refused to obey the order. Unless the
danger was so apparent and obvious that an ordinarily
prudent man, under like circumstances, would have re-
fused to have obeyed, there was no assumption of risk
by decedent in so doing. The deceased was not a tres-
passer, nor the emergency one of his providing. I. C. R.
R. Co. v. Keebler, 84 S. W. 1167; Southern Ry. Co. v.
Hart, 23 R. 1054; Bradshaw v. Louisville, etc., 14 R. 688;
Brice v. Louisville, 10 R. 526. That the decedent was
aware of the approach of the train, there is no doubt.
The foreman gave him notice of it, if he had not already
seen it. At the time he ceased to attempt to remove the
"jack" he was standing at the east end of the crossties,
and not directly upon the track, and while probably not
quite clear of the on coming train, if he had but stepped
toward the eastward the reasonable probability is that
he would have entirely escaped injury. The foreman
stepped to that side of the track and others present did
likewise and escaped injury. The speed of the train would
not and could not have caused him any injury if he had
remained upon the same side of the track upon which he
was situated when the foreman directed him to get out
of the way. He saw the train immediately at hand and
knew the consequences, if he came in contact with it. If,
without having some impelling reason, he voluntarily ex-
posed himself to a danger by attempting to cross the
track in front of the engine, when he was safe where he
was, he assumed the risk of the consequences, and his
death can only be attributed to his own negligence, with
which the negligence of appellant, if any, did not co-op-
erate. There is, however, evidence which tends to prove
that in the exercise of ordinary prudence, he did not deem
himself in a place of safety upon the east side of the track.
The evidence is conflicting as to the width of the space
between the track and the foot of the embankment. The
depth and width of the ditch upon that side between the
track and the embankment is differently estimated by

the different witnesses. The danger to be anticipated to one upon that side of the track from the engine striking the "jack" and knocking it against him is, also, to be considered. The excitement under which he probably labored from the near approach of the train and his exertions to remove the "jack" doubtless prevented him, under the circumstances from exercising his reason to the best advantage, and caused him to mistake as to the course of safety. While it was the duty of the decedent to exercise ordinary care to save himself from injury and to get out of the way of the train, yet, although it may appear, that if decedent had merely made a step to the eastward when he ceased to attempt to remove the "jack," under the order of the foreman to get away and allow the engine to knock it out, that he would have entirely escaped danger, the appellee is not precluded from a recovery, if it appears that through the negligence of appellant, he was placed in a perilous situation, which made immediate action necessary upon his part to escape danger, and through an impulse of fear or from being bewildered by the exigencies of the situation, he failed to choose the safe course to pursue and pursued a course which ended in his death, while the other course would have led to his safety. If decedent acted upon a reasonable apprehension of peril from remaining or going to the east side of the track and acted as an ordinarily careful man, under like circumstances, would have acted, he could not be charged with having assumed the risk of attempting to cross the track in front of the engine, nor with contributory negligence in so doing. Middlesborough R. Co. v. Stallard's Admr., 72 S. W. 17; South Covington & Cincinnati R. Co. v. Ware, 84 Ky. 269; Thompson on Negligence, Vol. 2, 1092; L. & N. R. R. Co. v. Malloy's Admr., 107 S. W. 217; 26 Cyc. 1513. Hence, the motion of appellant for a direct verdict in its behalf was properly overruled.

The rule, however, is elementary, that in the trial of ordinary actions, the issues of fact are for determination, under proper instructions, by the jury, and although the court should be of the opinion that the evidence greatly preponderates for or against the contention of a party; if there is evidence of fact, which supports a contention, or if the facts are undisputed, but are such that reasonable men will draw different conclusions from them, the issue should be submitted to the jury.

Without commenting upon the weight of the facts and circumstances in the evidence, or the conclusions which may be reasonably drawn from them, it seems that there was evidence which tends to support the contention, that decedent voluntarily assumed the risk of attempting to cross the track in front of the engine, and took his chance upon so doing and such issue, under proper instructions, should have been submitted to the jury. It necessarily follows that the court was in error, when as a matter of law, it instructed the jury that the negligence of appellant, in whole or in part, caused the death of decedent and took from the jury the issue as to whether or not the negligence of appellant caused the death of decedent.

The second instruction given the jury upon the trial, and which was objected to is substantially the same as was given by the trial court in the case of C. & O. Ry. Co. v. Addie Kelley, Admx., and was approved by this court, in an opinion found in 160 Ky. 296, and 161 Ky. 655, but upon appeal to the Supreme Court of the United States, in an opinion rendered in that case on June 5th, 1916, it reversed the judgment and remanded the cause, because of its holding that the instruction was erroneous. Reference is made to that opinion of the Supreme Court for the proper instruction to be given upon another trial, instead of the one condemned.

Instruction No. 3, which relates to the subject of contributory negligence, does not conform to what was adjudged to be the proper instruction upon contributory negligence in the action under the Federal Employers' Liability Act by the Supreme Court of the United States, in the case of N. & W. R. R. Co. v. Ernest, 229 U. S. 107; and the case of N. C. & St. Louis Ry. v. Henry, 158 Ky. 88, by this court.

Upon another trial, the instruction upon contributory negligence should be made to conform to the instruction approved in the cases, *supra*.

The judgment is reversed and the cause remanded for proceedings consistent with this opinion.