## Lexington Roller Mills Company v. Fields.

(Decided January 15, 1919.)

### Appeal from Fayette Circuit Court.

1. Master and Servant—Defective Elevator—Negligence.—Evidence that an elevator carrying a passenger ceased to rise with the machinery running and began to jump or jerk violently, in connection with evidence that gears by which it was operated were so badly worn that the contact surfaces were so reduced that for some time the gears had been riding each other instead of meshing, held to be sufficient evidence that the company was negligent of its duty to exercise reasonable care to maintain the elevator in a reasonably safe condition for use by its employee.

2.  Master and Servant—Assumption of Risk—Submission to Jury.—
    The evidence as to whether it was plaintiff's duty to inspect and
    know of the condition of the elevator as to safety being contra-
    dictory, it was proper to submit the question of assumed risk to
    the jury.

3.  Master and Servant—Instructions.—It was proper to qualify the
    instruction on contributory negligence by the sudden peril doc-
    trine upon evidence that tended to prove the plaintiff when he
    jumped from the elevator to his injury was suddenly placed in
    real or to him reasonably apparent danger by the negligence of
    defendant.

4.  Master and Servant—Instructions.—Plaintiff's right  to recover
    was not affected by the fact that had he not jumped he might
    not have been injured, nor because he in the moment of his
    peril did not correctly apprehend what had happened to the
    elevator or what might happen to him if he remained on it.

5.  Master and Servant—Instructions.—An instruction which erron-
    eously defined the defendant's duty to be to keep the elevator in
    a reasonably safe condition, instead of to exercise ordinary care
    to that end was not prejudicial where the right to recover was
    limited to a negligent breach of the duty, negligence being prop-
    erly defined in a subsequent instruction.

6.  Trial—Instructions.—The whole law of the case need not be
    stated in one instruction, but the instructions are to be con-
    sidered as a whole.

7.  Evidence—Value of Personal Services.—What some person for
    sentimental reasons may be willing to pay for plaintiff's services
    is not competent evidence of his ability to labor.

ALLEN & DUNCAN for appellant.

J. S. BOTTS, HUNT & BUSH for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

This is an appeal from a judgment for $3,900.00, fol-
lowing a verdict for appellee, who was plaintiff below,
for personal injuries sustained by him while an employe
of the appellant, defendant below, which he claims re-
sulted from the defective condition of an elevator that he
in the discharge of his duties was attempting to use to
carry him from the second to a higher floor of defend-
ant's mill.

The first and second grounds urged for a reversal
are that the court erred in overruling defendant's motion
for a peremptory instruction, and that the verdict is
flagrantly against the evidence, which will be considered
together.

1.  Plaintiff had been employed as second miller in this mill for nearly thirty years, and as such it was his duty, during the absence of the head miller, Mr. Patterson, to operate the regular mill machinery and keep it going. He testified, however, that it was no part of his duties to inspect or know of the condition of this elevator, which was entirely independent of the milling machinery, and used simply in connection therewith to carry employes and stock from one floor to another; that he had never inspected the machinery which operated and controlled this elevator and did not know of its condition, except that because of an attendant vibration the cogs of the gear had become worn. Mr. Patterson testified that it was plaintiff's duty to inspect and keep in order this elevator, but he did not testify that he ever required or knew of plaintiff performing any such duty in the fifteen years the elevator had been used in the mill.

Under this proof defendant was not entitled to the asked-for peremptory instruction upon the ground that the condition of the elevator was an assumed risk. Nor is there any merit in defendant's contention that the verdict should have been directed in its behalf because of a lack of proof that the elevator was in an unsafe condition.

The elevator had been in use for some fourteen or fifteen years, the teeth in the cogs in the spur gear and worm drive, by which the power that operated it was applied, were shown to have been worn by friction to such an extent that the contact surfaces had been reduced from the original nine-sixteenths of an inch to five-sixteenths of an inch on those parts least worn, and to only two-sixteenths of an inch on one tooth in the spur gear and but three-sixteenths of an inch on the tooth on either side of the one most reduced; that the benches formed on the teeth showed different adjustments of the shafts, and that two of these badly worn teeth in the spur gear had been for some time riding the worm gear instead of meshing with it. Mr. Patterson, the head miller and superintendent, inspected the elevator about three weeks before the accident and testified he knew of the worn condition of these two gears, but thought the contact surfaces were still sufficient for safety; that with a weight on the elevator, either ascending or descending, if one of these teeth should be broken the whole gear might be

stripped, which the mechanical construction shows would have resulted in a sudden fall to the bottom of the shaft.

Plaintiff testified that on the morning of the accident he got on the elevator at the second floor and started up; that when about six or seven feet from the floor the elevator ceased ascending and began to jump or jerk so violently as to raise him off his feet; that realizing something was wrong, and suspecting that the elevator had become entangled with a sack of stock or something that might fall on him from above, he jumped to the floor, crushing his right heel to such an extent he is and will be for life a cripple.

Both Mr. Patterson and Prof. Paul Anderson, competent experts, testified that even in the badly worn condition of the gears the elevator was safe, but this, of course, presupposes a meshing of the two gears to the extent of the possible two-sixteenths of an inch not yet worn away, although worn in places almost to a feather's edge, but neither did say, nor would have said, we are quite sure, that the elevator was safe if, because of loose shaft adjustment, or for any reason, the gear was slipping at these worn teeth. This, we think, is clearly what Fields' testimony proves, or at least tends to prove, was happening when he jumped.

The elevator machinery was running, and if the spur gear and the worm drive were meshing and holding, the elevator would have risen continuously and evenly, yet Fields testifies that the elevator ceased to rise and began to jump or jerk to such an extent he was lifted off his feet. This evidence, in connection with the worn condition of the gears, and the certain laws of physics, is explainable under no other theory than that the elevator ceased to rise and began to jump because the gears were momentarily loosing their contact, and the spur gear instead of rising with the worm gear was "slipping a cog," and the wonder is, with plaintiff's weight on the elevator, the gear in its worn condition was not stripped, as Patterson said might have been the result if a tooth had broken. To say that this was not evidence that the elevator was in an unsafe condition, or to deny plaintiff's position of apparent and real peril, is to ignore the only reasonable deduction therefrom, and the fact that plaintiff did not clearly and at once apprehend just what had happened to the elevator, or what might happen to him in conse-

quence thereof, does not in the least alter the defendant's liability if its negligence had in fact, or as it reasonably appeared to plaintiff, placed him suddenly in a position of peril. Nor does the fact that plaintiff would have avoided injury, as it later appeared, had he remained on the elevator and stopped it (as he might easily have done) necessarily defeat his right of recovery.

The cases cited and relied on by defendant, among which are Avery & Son v. Puckett, 115 S. W. 723; Briggs' Gdn. v. N. N. & M. V. R. Co., 15 Ky. Law Rep. 618; Miller Creek R. Co. v. Barnett, 159 Ky. 344, are not in point because in each of them there was neither a real nor apparent danger, whereas in this case there was certainly to an ordinarily careful and prudent person a reasonable presumption of immediate danger; in fact, there was real danger, because from the evidence that the cogs were slipping and that the gear might be stripped, no man could tell, then or now, with certainty, what might have been the result had plaintiff remained on the elevator, as was immediately realized by defendant's superintendent, who would not permit the elevator to be used again until new gears were installed. The cases applicable here are such as C. N. O. & T. P. Ry. Co. v. Jones' Admr., 171 Ky. 11; Interstate Coal Co. v. Lowe, 153 Ky. 323; C. & O. Ry. Co. v. Brown, 152 Ky. 479; Geary v. Mc-Creary, 147 Ky. 254; McDonald v. Wallsend Coal & Coke Co., 135 Ky. 624, and Maysville & B. S. R. R. Co. v. McCabe, 100 S. W. 219, in which there was proof of a real or apparent danger suddenly imposed by negligence.

The court did not err in denying defendant's motion for a directed verdict. Nor is the fact the elevator did not fall after plaintiff jumped off of it, in connection with the other evidence introduced by defendant that it was safe, sufficient to render the verdict of the jury flagrantly against the evidence.

2. The third reason urged for a reversal is that the instructions given were erroneous and prejudicial, but what we have already said makes it clear that there is no merit in the contention that the court erred in attaching to the instruction on contributory negligence the sudden peril qualification. Nor would it have been proper to limit the qualification to the precise danger of sacks of stock falling on him that plaintiff in his moment of peril mistakenly feared, because to so limit it would nullify

the doctrine that one in sudden peril, real or apparent, as a result of the negligence of another is not to be deprived of his right of recovery simply because he did not, under such circumstances, think and act accurately.

Several objections are also urged to the form of instruction No. 1 defining defendant's duties and permitting a finding for plaintiff if the jury believed from the evidence that his injuries resulted from a breach thereof, and the instruction does not evince the trial court's customary care in preparation, but it does not contain any prejudicial error. It erroneously defines defendant's duty to be to keep the elevator in a reasonably safe condition rather than to exercise reasonable care so to do, but this error was cured by limiting the right to recover to a negligent breach of the duty, negligence being defined in a subsequent instruction to be the failure to use that degree of care an ordinarily prudent person would exercise under like or similar circumstances.

The instruction is also open to criticism because of tautology, but we do not agree with counsel that it put upon defendant the burden of keeping the elevator in such condition that it appeared safe to any one but defendant, and there certainly is no real vice in the inartificial and superfluous statement ''and negligently permitted said elevator to become unsafe, or in such condition that it would appear to defendant in the exercise of a reasonable judgment to be safe,'' since if defendant permitted the elevator to get in such condition that it appeared to the defendant itself *in the exercise of a reasonable judgment* to be unsafe, defendant certainly had violated its duty to exercise reasonable care to provide reasonably safe appliances for its employes.

The instruction is also criticised because it did not qualify in terms plaintiff's right of recovery if the jury believed it was his duty to inspect, &c. But these qualifications were specifically and correctly set out in instructions 3 and 4 given, and the criticised instruction closes with this statement: ''Unless they should find for the defendant under instructions 3 and 4.'' The rule is thoroughly established that the entire law need not be stated in one instruction, Hobson on Instructions, section 16, but the instructions are to be considered as a whole. *Ibid,* section 47.

3.   The fourth and last insistence is that the court erred in refusing to permit defendant to prove that two or three days before plaintiff quit work and filed this action the company's president said to him that he could stay there and do what he could and the company would continue to pay him full wages.   Plaintiff had testified his injuries incapacitated him to do much work, although he explained, what he was able to do and had been doing since the accident, and counsel for defendant insist the rejected evidence was competent to rebut plaintiff's evidence that his power to earn money had been reduced, but this is not its effect, because what a former employer might be willing to pay him, whether he could earn it or not, is not in any sense a proper test. Such payments, if not earned, might cease at any time, or the plaintiff might not care to accept payments he could not earn.   What some person for sentimental reasons may be willing to pay for plaintiff's services is not competent evidence as to his ability to labor, and the court did not err in the exclusion of such evidence.

Wherefore, the judgment is affirmed.