## HINES v. SWEENEY

(No. 1007; Decided October 3, 1921; 201 Pac. 165)
(Rehearing Denied Nov. 22, 1921; 201 Pac. 1018)

RAILROADS—SPEED CONSTITUTING NEGLIGENCE—MASTER AND SERVANT—TRACKMEN TO KEEP LOOK OUT—ENGINEER MAY ASSUME TRACKMEN WILL KEEP LOOK OUT—TRACKMEN MUST ACT WITH REASONABLE PROMPTNESS FOR SAFETY—RAILROADS DUTY TO TRACKMEN—DUTIES OF ENGINEER—WARNINGS OF TRACKMEN—ENGINEER'S NEGLIGENCE IN NOT ANTICIPATING COLLISION WITH MOTOR CAR QUESTION FOR JURY—EVIDENCE—CONCLUSION AS TO SPEED ON FAILURE TO PRODUCE SPEED RECORDED—ENGINEER'S NEGLIGENCE QUESTION FOR JURY—NEGLIGENCE—RULE AS TO CONTRIBUTORY NEGLIGENCE UNDER FEDERAL ACT—FEDERAL ACT CANNOT BE NULLIFIED BY CALLING CONTRIBUTORY NEGLIGENCE CAUSE—NEGLIGENCE AS AFFECTED BY INTERVENING AGENCY—PROXIMATE CAUSE OF INJURY HELD FOR JURY—DEGREE OF CARE REQUIRED IN EMERGENCY AS AFFECTING QUESTION OF NEGLIGENCE—INSTRUCTIONS—CONTRIBUTORY NEGLIGENCE OF INJURED TRACKMAN QUESTION FOR JURY.

1. In the absence of legislation to the contrary, no rate of speed, though great, is, in thinly populated districts, ordinarily negligence *per se*.

2. Upon track workers rests the primary duty of self-preservation in line of their employment by keeping a lookout for and avoiding trains.

3. An engineer is not bound generally to stop or check his train as a precaution against injury to trackmen, and has the right to act on the presumption they will look out for their own safety.

4. Trackmen are only entitled to sufficient warning of the approach of a train and an opportunity to get out of the way, and, if given such warning and opportunity, it is their duty to act with reasonable promptness for their own safety.

5. Track workers are not trespassers, and it is the railroad's duty to use reasonable care in the operation of trains so as to protect them from injury, in such way as the conditions demand.

6. When an engineer is warned that trackmen are ahead and apt to be in danger, he must take notice thereof and exercise that reasonable care which the circumstances demand, and put his train under such control that he may stop it should necessity appear.

7. Where an engineer was warned that a motorcar carrying trackmen was just ahead, the nature of the warning, speed and control of the train, engineer's knowledge of road, proximity to a cut where the train might meet up with the motorcar, are circumstances that warrant a finding by a jury that a collision whereby a trackman was killed should have reasonably been anticipated by the engineer, and an instruction that, if sufficient time was given deceased to get off the track in safety, then the engineer was not negligent as a matter of law, was too favorable to defendant.

8. Where a railroad might have produced its speed recorder and did not do so, a conclusion that the speed was greater than was shown by the testimony of witnesses on that point is justified.

9. The care or negligence of an engineer depending upon the rate of speed of his train, after a warning of motorcar carrying trackmen just ahead, and the fact as to whether he could stop within a reasonable distance, are for the jury.

10. Under federal Employers' Liability Act, § 3 (U. S. Comp. St. § 8659), providing that contributory negligence of an employe shall diminish the damages in proportion to the amount of the negligence attributable to him, a railroad company is liable for injury to its employe if its negligence contributes proximately to the injury, no matter how slightly and no matter how great the negligence of

the employe, and is absolved from liability only when the employe's act is the sole cause of the injury.

11. Federal Employers' Liability Act (U. S. Comp. St. §§ 8657-8665), providing that employe's negligence is not a defense, but only mitigates the damages, cannot be nullified by calling the act of an employe the proximate cause of the injury instead of contributory negligence, if the injury was caused in whole or in part by employer's negligence.

12. An intervening agency, in order to supersede the original negligence of defendant as the sole legal cause, must be independent of the latter, and not set in motion thereby, and itself sufficient to produce the injury.

13. Where an engineer was warned that a motorcar carrying trackmen was just ahead, and in passing over a curve in a cut at a speed of about 20 miles an hour he discovered the car about 990 feet away, when he applied the brakes and stopped within about 1,000 feet, but struck the car and the motorman who had fallen under it in attempting to escape, held that it was a question for the jury as to whether the negligent speed of the train was the proximate cause or one of the proximate causes of the injury, the jury being warranted in finding the injury was within the field of reasonable anticipation.

14. The rule that one who is required to act suddenly and in the face of imminent danger is not required to exercise the same degree of care as at other times has application where the person injured is placed in sudden peril without his fault.

15. An instruction that one who acts in a sudden emergency, not being held to the same degree of care for his own safety as at other times, was properly refused for not stating that the emergency arose without the fault of the plaintiff.

16. Negligence of trackmen on motorcar in starting out ahead of a train after warning not to proceed is not eliminated from case by notice to engineer that the trackman was ahead, and is proper question for jury.

### ON PETITION FOR REHEARING

17. One is liable for all the natural consequences proximately resulting from his negligence, without the intervention of an efficient intervening cause, although the injuries actually resulting could not have been foreseen.

18. In order that the acts of an employe can be held to constitute the sole proximate cause of the injury, so as to

absolvé the railroad from liability under the employers'
Liability Act (U. S. Comp. St. §§ 8657-8665), it must ap-
pear, not only that the employe was negligent, but also
that the employer was not guilty of negligence contribut-
ing to the injury.

19.  In action under the Employers' Liability Act (U. S. Comp.
St. §§ 8657-8665), for death of a trackman riding on a
motor car, the question whether his act in pulling the
lever the wrong way on approach of locomotive at the
rate of 20 miles an hour was the sole proximate cause of
the collision, or whether negligence of engineer in oper-
ating locomotive at such speed after warning that the
car was ahead contributed thereto, *held* for the jury.

20.  ''Negligence'' consists of a violation of duty owing by
one to another.

ERROR to the District Court of Sheridan County, HON.
JAMES H. BURGESS, Judge.

Action by Lucy Sweeney as administratrix of the estate
of John C. Sweeney, deceased, against Walker Hines, Di-
rector General of Railroads on account of the death of de-
ceased, alleged to have been caused by operation of a rail-
road train at a dangerous and negligent rate of speed.
There was judgment for plaintiff and motions for new trial
made by both parties were denied; defendant brings error
and plaintiff files cross petition in error.  The material
facts are stated in the opinion.

*Goddard & Clark* and *C. A. Kutcher,* for plaintiff in
error.

The evidence is insufficient to establish negligence on the
part of defendant and shows the sole proximate cause of
the collision and resulting injuries and death of deceased
was his own carelessness.  The relief sought by plaintiff in
error is the directon of a judgment in his favor, notwith-
standing the verdict under Chapter 134 of the Laws of
1915.  The motion for new trial was filed for this purpose
and not to secure a retrial of the cause.  Defendant was en-
titled to an instructed verdict.  (Boswell v. Bank, 16 Wyo.
161; 92 Pac. 624.)  The evidence failed to establish a dan-

gerous and negligent rate of speed. The proximate cause of the collision was the carelessness of deceased in starting out with a motor car in the first instance against the advice of the station agent, in failing to look out for the train and in failing to apply the brake on his motor after he heard or saw the approaching train, also in jumping off in front instead of the side of his motor, which resulted in his getting knocked down and pinned beneath the car on the track. The engineer took every reasonable precaution to avoid the accident. The rule contended for by plaintiff in error apparently is that the engineer was bound to foresee and anticipate the carelessness of deceased and the resulting accident which occurred to him and to regulate the train accordingly. A similar contention was over ruled in Hofford v. Illinois Central, 110 N. W. 447. The master is not chargeable with negligence where the injury could not have been foreseen or anticipated, as to the probable result of the accident or omission complained of. A person is not answerable at law for a failure to avert or avoid peril that could not have been foreseen by one in like circumstances, and in the exercise of such care as would be characteristic of a person so situated. (3 Labatt M. & S. 1042; 29 Cyc. 432; 20 R. C. L. 11.) Persons operating dangerous instrumentalities have a right to rely upon those who may be imperilled thereby to take the usual and customary measure to avoid injury. (20 R. C. L. 31; Keefe v. C. N. & W. Co., 60 N. W. 503.) In the absence of statute or ordinance no particular rate of speed of trains is of itself, even at crossings in the country, sufficient to impute negligence. (Cohoon v. C. B. & Q. (Ia.) 57 N. W. 727; Mo. Pac. Ry. Co. v. Hansen, (Neb.) 66 N. W. 1105; Partlow v. Illinois C. R. R., 37 N. E. 663; S. L. & M. S. R. Co. v. Barnes, 31 L. R. A. N. S. 778.) An engineer has a right to presume that persons walking along the track will appreciate the danger and act with discretion and he is under no obligation to stop the train and lessen speed before discovering that such person is heedless of warnings given of the approaching train.

(Shearman on Negligence, Third Edition, 481. L. R. Co. v. Jolly's admx. 90 S. W. 997; Southern Ry. C. Gray, admrx. 60 L. Ed. 1030; Vizacchero v. R. I. Co. 59 Atl. 105; Cohen v. Eureka Co. 14 Nev. 376; Warner v. R. R. Co. 44 N. Y. 465; Telfer v. N. R. Co. 30 N. J. Law 188; Winston v. R. & G. R. Co. 90 N. C. 66.) The engineer, upon discovering the motor on the track, reduced the speed of his train to a rate of from 18 to 20 miles per hour which would have enabled deceased to get off the track in safety, had sounded the whistle and kept a careful lookout ahead; having done all in his power to stop the train and avoid a collision he was not guilty of negligence. (20 Cyc. 530; So. Ry. Co. v. Gray, 136 L. Ed. 1030.) Instruction No. 14 correctly announced the law in harmony with the foregoing authorities. Plaintiff in error asks that this court direct judgment to be entered in favor of defendant, notwithstanding the verdict, and in case relief in this form be denied, then that the judgment below be affirmed.

*Brome & Hyde* and *E. E. Enterline*, for defendant in error.

The defendant does not seek a new trial; its sole complaint here is that the trial court did not direct a verdict for defendant at the close of the evidence. It is urged that deceased was negligent in starting out with his crew ahead of an over due train and also negligent in the manner he attempted to stop the motor when he discovered a train approaching on the track behind him. If deceased was negligent, his negligence could only operate to diminish the amount of recovery; it is not a defense under the Federal Employers' Liability Law. If the evidence disclosed negligence on the part of the engineer the trial court was not in error in refusing to direct a verdict for defendant; a reasonable interpretation of the evidence must establish negligence on the part of the engineer. As to the cross appeal by plaintiff below and defendant in error here, we contend that the verdict and judgment below furnished inadequate compensation to the widow and children for the injury

they have sustained; this is apparently recognized by counsel for plaintiff in error in asking this court to affirm the judgment if this court should not direct a judgment for plaintiff in error notwithstanding the verdict. Defendant in error however, seeks a new trial; she complains of the giving and refusing of certain instructions set forth at pages one to three of the bill of exceptions, instruction refused being number "L," instruction given being nine and ten respectively, all of which was prejudicial to plaintiff below. (29 Cyc. 521; Dumane v. C. M. & W. Co. 72 Wis. 523; Dickson v. O. & St. L. Co. 124 Mo. 140.) The giving of instructions nine and ten were prejudicial, especially in view of the courts refusal to give instruction numbered "L" since the latter instruction relates to the conduct of Sweeney in starting out ahead of the train, thus authorizing the jury to find said act to be negligence on the part of deceased; when the engineer was notified at Felix that a motor car was just ahead the negligence of deceased, if any, in starting out was eliminated from proper consideration. For these reasons we submit that the action of the court in submitting the issue of plaintiff's negligence to the jury should be approved, but where there is error in giving and refusing instructions to which we have challenged the court's attention, the judgment should be reversed and a new trial ordered.

*Goddard & Clark* and *Chas. A. Kutcher,* in reply.

We do not contend that any negligence of deceased bars recovery if the engineer was also negligent, but the engineer was not shown to be negligent as a matter of law. The sole proximate cause of the death of deceased was his own carelessness. This is emphasized by the testimony quoted in the brief of defendant in error; the law does not require the master to anticipate the negligence of his servant. (1 Thompson Neg. 228.) The engineer kept a careful look out, sounded his whistle and reduced the speed of his train. His duty did not require him to further reduce the speed of his train until he discovered the peculiar peril of deceased.

·(Vezacchero v. R. I. Co. 59 Atl. 105.) Counsel seeks to distinguish the Iowa case of Hoffard, v. Ill. Cent. Ry. Co. 110 N. W. 446 from the case at bar, but in that case the engineer was not handed a note advising him of the section men on the track ahead. It is apparently contended that the engineer should have anticipated carelessness on the part of deceased with his motor car and should therefore have regulated the speed of his train in a way to avoid collision. This contention was fully answered by the Iowa case above referred to. As· to the cross appeal, a new trial cannot be had because of the smallness of damages allowed except when the action is upon a contract and the claim is for injury of property. (Sec. 3601 Comp. Stats. 1910.) Our statute in fact forbids new trials on such ground in an action for an injury to the person or reputation, etc. (Sec. 4602 Comp. Stats. 1910.) Even if the engineer was negligent, the evidence shows such gross negligence on the part of deceased as to render the verdict excessive. Instruction "L" the refusal of which is complained of, was not numbered or signed as required by Section 4499 Comp. Stats. 1910, therefore its refusal cannot be assigned as error. (Morrisette v. Howard, (Kans.) 63 Pac.· 706; Mason v. Siglitz, (Colo.) 44 Pac. 588; Craig v. State, (Ind.) 26 N. E. 842; Chic. L. Co. v. Fix, (Okla.) 78 Pac. 316.) The quotation from 29 Cyc. does not state the exceptions to the rule and the instruction respecting emergencies does not apply. Instructions numbered nine and ten given by the trial court are amply justified by the authorities. The cross petition in error is without merit.

BLUME, Justice.

This action was brought by the administratrix of the estate of John C. Sweeney, deceased, as plaintiff, on account of the death of said deceased by a train of plaintiff in error, defendant below, which was alleged to have been run at .a dangerous and negligent rate of speed. For convenience the parties will be hereinafter referred to in the same order as in the court below. The evidence is nearly

undisputed, and in giving the material facts, we shall closely follow the lucid statement contained in the brief of counsel for defendant.

On May 15, 1918, and for some time prior thereto, the deceased, a man then 35 years of age, was engaged as section foreman on the railroad of defendant. The section upon which he was employed was situated in Campbell County, Wyoming, and extended from a small station, called Felix, to Echeta, which was about six or seven miles west of Felix. He resided at Echeta where he returned each day after his labors were finished. His duties required him to superintend a gang of section laborers engaged in the work of repairing track. For this purpose he had a gasoline motor car, which carried him and his men to and from their work.

On the day in question, the deceased with his four men, all of whom were Mexicans, after finishing the work on the track about five o'clock in the afternoon, and after adjusting or filling some switch lights, drove the motor car to the station at Felix, and inquired of one Mooney, the station agent, concerning the passenger train coming from the east, and was informed by Mooney that the train was past due and would arrive at any moment. Upon Sweeney intimating that he intended to start for Echeta ahead of this train, he was admonished by Mooney as well as by Mooney's father, who was present, not to go. Notwithstanding this advice and warning, the deceased started with his men on the motor car for Echeta.

To the east of Felix a train could be seen coming for a distance of one and one-half miles. A fourth of a mile to the west of Felix was a cut, curving sharply to the right. The cut is nearly a fourth of a mile in length. The deceased was killed at a point about 1350 feet from the east end or mouth of the cut, apparently only a short distance from the west end thereof. From this point to the place where the engineer, when in the cut, could first see the motor car on the track was about 900 to 990 feet.

After Sweeney started from Felix and had proceeded a short distance, but before he reached the cut, the agent, Mooney, observed the passenger train approaching from the east. He thereupon, in an effort to signal and stop Sweeney, went out on a knoll or elevation, near by, and tried to signal for Sweeney to stop, and continued to do so until Sweeney entered the cut to the west of Felix and went out of sight. He failed to attract Sweeney's attention, Sweeney and his men apparently never looking back after they started towards the cut. Thereupon, Mooney went to the station, wrote upon a piece of paper the words "Motor car just ahead," and, when the engineer of the passenger train passed the station (the train not stopping), handed this paper to the engineer. This warning, as the engineer testified, meant to him that he was to use extra precaution.

This passenger train was a mixed train, consisting of an engine, eight box cars filled with household goods, one baggage coach, and eight passenger coaches filled with passengers.

The train approached Felix from the east at about forty miles per hour, and the engineer checked the speed upon approaching Felix until the train was traveling at about twenty-eight or thirty miles per hour in passing Felix. By the time the engineer had read the note he was past Felix and near the east end of the cut. He immediately, according to his testimony, which is corroborated by other witnesses, applied his brakes, reducing the speed to 18 or 20 miles per hour, sounded the whistle, and after entering the cut again sounded the whistle, keeping at all times a careful lookout ahead. He discovered the motor car on the track when about 900-990 feet distant from it, but testified that he saw no men on or near the motor car, or on the track, and that he did not know that Sweeney was pinned beneath the car. He saw, however, several men on the side of the track. Then he immediately put on the emergency brakes, applied sand to the track, blew the whistle, and did everything in his power to stop the train and to avoid a col-

lision. Before the train could be stopped, however, it collided with the motor car and threw it, together with Sweeney, who was found to have been caught beneath it, off the track. The engine ran about three car lengths past the point where the collision occurred before stopping.

Sweeney, in going toward Echeta, drove the motor car himself. After he had gone some distance west of the cut, he discovered the approaching train in the cut back of him. It was a clear day and still daylight. As soon as Sweeney discovered the passenger train approaching, he apparently became excited and failed to apply the brake, but opened the throttle, thus accelerating the speed of his engine. He went, it seems, about 66 feet further, then apparently jumped off in front of the car, was knocked down by it and pinned beneath it on the track. He was unable to extricate himself and called to the men to help him. These men had safely jumped off the car to one side immediately upon seeing the train. One of them went to the assistance of Sweeney, but was unable alone to lift the car off the deceased, and he thereupon crossed the track to the north side in order to signal the engineer and gave the stop signal, but the train was then almost upon them, and immediately thereafter the deceased was run over by the train and so severely injured that he died within a few hours thereafter. A few other facts will be stated later in the opinion.

The defendant moved for a directed verdict both at the close of plaintiff's testimony as well as at the close of all the evidence, both of which motions were overruled. The jury returned a verdict for plaintiff in the sum of $3,425.54, upon which judgment was entered. A motion for a new trial was filed by both parties; both motions were overruled and the case is here on petition in error of defendant and upon cross-error of plaintiff. The only point raised by defendant is that under the evidence the lower court should have directed a verdict in its favor, and seeks to have judgment for it entered in this court under the provisions of Section 5897 of the statutes of 1920.

1. In the absence of legislation to the contrary, no rate of speed, though great, is, in thinly populated districts, ordinarily negligence *per se*. (Elliott on Railroads, § 1160; Ry. Co. v. Carter, 180 Ky. 765; 203 S. W. 740; Warner v. R. R. Co., 44 N. Y. 465; Byson v. R. R. Co., 57 Conn. 9, 17 Atl. 137; R. R. Co. v. Kistler, 66 O. S. 326, 64 N. E. 130.) The main duty of an engineer in charge of a passenger train is to look after the safety of the passengers. The needs and conditions of the times and the people demand speedy conveyance, and in order to maintain that speed, and safely and properly operate the trains, the railroad company employs track workers and section men. These men are necessarily engaged in a hazardous occupation, and it is their duty to see that the purpose of their occupation is fulfilled. Hence upon them rests the primary duty of self-preservation in the line of their employment, by keeping a look-out for, and avoiding, trains which pass along the tracks on which they are at work. (Tober v. R. Co., 210 Mich. 129, 177 N. W. 385. Connelly v. R. Co., 201 Fed. 54; Hoffard v. Railway, 138 Ia. 543, 110 N. W. 446, 16 L. R. A. N. S. 797.) As to them the railroad company will generally not be negligent if the trains are operated in the ordinary way. An engineer is not bound, generally, to stop or even to check his train as a precaution against injury to persons working on the track, and he has the right to act upon the presumption that they will look out for their own safety. (Hoffard v. Railway, supra., O'Brien v. Railroad, 210 N. Y. 96; 103 N. E. 895; Connelly v. R. Co., supra; Ingham v. Ry. Co., 169 N. Y. S. 346; Sienchula v. Ry. Co., 209 Ill. App. 15.) Many cases go even to the extent in holding that no duty to look out for them ordinarily devolves upon the railroad company. (O'Brien v. Railroad, supra,) and see cases collated in L. R. A. 1916 F, 555 and 564. In any event, a man working or walking on the track, is, ordinarily, only entitled to sufficient warning of the approach of trains and an opportunity to get out of the way before the train reaches him, and if he is given such warning, and an opportunity to escape, it be-

comes his duty to act with reasonable promptness for his own safety. (Olsen v. Ry. Co., (S. D.) 182 N. W. 454. Vizacchero v. Rhode Island Company, 26 R. I. 392, 59 Atl. 105.) The trackworkers and section men, however, are not trespassers. There is some duty that is owing them. The foregoing cases, therefore, but interpret and apply, and by no means abolish the fundamental rule, never to be lost sight of, that upon the railroad company, as in like cases upon every master, devolves the duty to use reasonable care and precaution in the operation of its trains, so as to protect from injury, in such way as the conditions demand, the persons working upon and rightfully upon its tracks. This principle has been frequently, and we think uniformly applied in cases where the presence of these men was known or was to be anticipated, the specific care in each case depending upon the circumstances. (33 Cyc. 809; R. R. Co. v. McCaskell, 118 Miss. 629, 79 So. 817; Hunsaker v. Coal & Iron Co., 181 Ky. 598, 205 S. W. 612; Brightwell v. Lusk 199 Mo. App. 643, 189 S. W. 413; Hoffard v. Railway, supra; Bennett v. Ry. Co., (Ia.) 174 N. W. 798; Grow v. R. R. Co., 44 Utah 160, 138 Pac. 398; Tober v. R. Co., supra.) In R. R. Co. v. McCaskell, supra, the court said:

"But the plaintiff has room to contend that the railroad company owed him the same duty which it owed to every other person lawfully on the right of way, and as stated by the Supreme Court of Arkansas in St. Louis I. M. & S. R. Co. v. Neeley, 63 Ark. 636, 40 S. W. 130, 37 L. R. A. 616, 'the railroad company owed him the duty to employ reasonable care to avoid injuring him.' "

In Hunsaker v. Coal and Iron Company, supra, the court said:

"So, if the Ashland Coal & Iron train crew from the circumstances should have anticipated the presence of Hunsaker or other persons on or near the cars standing on track No. 5, then it was the duty of that crew to sound a warning or maintain a lookout ahead, and *to guard against injury to such persons.*"

In Tober v. R. Co., supra, the court said:

"Although it was primarily plaintiff's duty when walking upon the tracks to look out for his own safety and keep out of the way of passing engines or trains, and the duty imposed upon defendant in its switching operations with reference to yard employes or section hands working upon the tracks was much less in degree than as to others, there was yet a concurrent or secondary duty to carry on the yard work with reasonable speed, caution and care for the safety of all employees at work in the yard, according to existing conditions."

In the case at bar the engineer received a note stating "motor car just ahead," which the engineer testified signified to him that he was to use extra precaution. The question, therefore, arises, as to what particular care he should have used under such circumstances. The cases nearest in point, which we have been able to find, are R. Co. v. Evans, 170 Ky. 536, 186 S. W. 173; and Ry. Co. v. Jone's Adm'r., 171 Ky. 11, 186 S. W. 897. In both of these cases a signal was given that repair men were ahead on the track. We do not think that because the signals in these cases were apparently entirely ignored, and there are many facts in these cases differing from those in the case at bar, that the general rule there laid down as to the duty of the engineer, in case such signal is given, is in any way affected thereby. That rule was stated in the Evans case, supra, as follows:

"It was the duty of the engineer in charge of the train, if he was warned some distance before reaching the hand car that it would likely be on the track, to keep a sharp lookout for its presence and to have the train under such control as that it could be stopped within a reasonable distance."

And in the second case, above mentioned, the court said:

"It does not appear that the engineer had any knowledge of the presence of the section hands upon the road at the point where they were, but he should have operated the train cautiously, kept a lookout and the train under con-

trol, so as to have been able to have stopped it if necessity appeared.''

Under the holding of these cases, whenever a warning is given to the engineer in charge of a train that trackmen are ahead and apt to be in danger, he must take notice thereof, and must exercise that reasonable care which the circumstances in each case and the character of the warning demand. He must put his train under such control that he may stop it, should necessity appear. As to the exact extent of such control, and what may be the reasonable distance in which the train should be able to be stopped, will depend, of course, upon the particular circumstances of each case. If these principles are applicable in this case, as we believe they are, then instruction No. 14, given in this case by the court below, wherein the jury were instructed that if sufficient time was given Sweeney to get off the track in safety, then that the engineer was not negligent, as a matter of law was an instruction more favorable to the defendant than that to which it was entitled. No greater requirement, as we stated before, could in the ordinary case be made of the engineer than indicated in that instruction, and often the court may so hold as a matter of law; but we cannot do so in this case any more than was done in the Kentucky cases, particularly in view of the peculiar warning given in this case. The facts in a particular case may require greater care. The warning given in the case at bar was more precise, more emphatic, than that given in the Kentucky cases cited above. ''Motor car *just* ahead'' might well be held by the jury to have meant that it was *immediately* ahead, requiring instant, effective action to avoid injury. The note containing this warning was not official and out of the ordinary. When it was handed to the engineer, it must have conveyed to him knowledge that the station agent was greatly apprehensive of a collision, offsetting, as it might do, in the minds of the jury, the presumptions in which the engineer was ordinarily entitled to indulge. The train was late, conveying to him the knowledge that the men on the car ahead might consider them-

selves safe, or at least, that they might be oblivious to danger. He, as a man of experience, might well be held to know that the motor car, in travelling, makes such noise as to make it difficult for those travelling thereon to hear the whistle of the engine. He knew the cut was just ahead of him; the track was curved; the men on the motor car could not see the train; they did not have the same means of taking steps for their own protection as they would have in case of a straight track with an unobstructed view thereon. The person in control of the train did not know but what they might be but a short distance from him when he would arrive at the point where he could see them. Under these circumstances, we cannot say as a matter of law that the jury were unwarranted in finding that a collision should reasonably have been anticipated by the engineer. And if an injury of *some character* should have been reasonably anticipated by him, then that fact may be decisive of the question of negligence. (Christianson v. Ry. Co., 67 Minn. 94, 69 N. W. 640; Hill v. Winsor, 118 Mass. 251; Ry. Co. v. Whitehurst, 125 Va. 260, 99 S. E. 569; Ry. Co. v. Stepp, 164 Fed. 785, 22 L. R. A. N. S. 350.) We shall consider the element of reasonable anticipation more in detail when we come to the question of proximate cause. Though not necessary to be taken into consideration in our holding, we might call attention to the fact that the testimony showed that the engine on the day of the accident in question was equipped with a speed recorder, under the control of the railroad company. This recorder was not produced in court, and its non-production not explained. The testimony given by the railroad employees was to the effect that the speed of the engine in going through the cut was reduced to 18 or 20 miles an hour. The speed recorder, no doubt, would have shown beyond cavil what the speed actually was. The jury are the judges of the weight of the evidence. The rate of speed at the station of Felix, which at that place was about 30 miles an hour, was some evidence of what the rate of speed might have been in the cut. (Kirby v. R. R. Co., 63 S. C. 494, 41 S. E. 765; see also Laufer v.

Traction Co., 68 Conn. 475, 37 Atl. 379, 37 L. R. A. 533.) It is not unlikely that in view of the unexplained non-production of the speed recorder, the jury may have believed that the speed in the cut was, perhaps, greater than that shown by the testimony of the witnesses on that point, and there can be no question that they had the right to come to such conclusion under the circumstances. (Ry. Co. v. Ellis, 54 Fed. 481. Studebaker Bros. Co. v. Witches (Nev.) 199 Pac. 477, 478.)

Practically the only protection in the power of the engineer in this case, after the motor car passed into the cut, was to have his train under control. Upon the rate of speed largely depended his care or negligence, and the fact as to whether or not he could stop his train within what the jury would consider a reasonable distance. Shall this court say as a matter of law that 20 miles an hour was not, under the circumstances, negligent, and that the jury were bound to fix the reasonable stopping distance of the train by that rate of speed? If 20 miles, why not 25 or 30 miles? Where, in other words, would counsel have us fix the dividing line where the province of the jury ends and that of the court begins? The question itself suggests the difficulty and we believe that we would invade the province of the jury, if we should say that the rate of speed shown in this case was not negligent as a matter of law. In the case of Ry. Co. v. Ellis, supra, the court said:

"The presumption is that jurors are reasonable men and that the trial judge is a reasonable man, and when the judge and jury who tried the case concur in the view that the evidence established negligence, every presumption is in favor of the soundness of that conclusion. The whole fabric of our judicial system is grounded on the idea that jurors are better judges of the facts than the judges."

In Kirby v. R. R. Co., supra, the court held that whether any rate of speed shows negligence, is a question for the jury, and that the court should not instruct the jury that a given speed does or does not constitute negligence. Whether this is universally true need not be decided. It has, how-

ever, been often held that whether a rate of speed is negligent, and as to what constitutes reasonable care is ordinarily a question for the jury. (Elliott, supra, § 1160; 33 Cyc. 792, 902; 29 Cyc. 634-636.) Even though the facts are undisputed, still, if more than one inference can be drawn therefrom, the question of negligence is for the jury. (Water Company v. Towage Co., 99 Me. 473, 485, 59 Atl. 953.) In the foregoing discussion we have not at all overlooked the contributory negligence, if any, of the deceased, but have mainly considered whether in any view of the case, some negligence might be ascribed by the jury to the defendant. We think there was no error in submitting this question to them.

2. Defendant further contends that its negligence, if any, is not the proximate cause of the injury, but that the accident of deceased in being pinned under the motor car, brought about by his own negligence, was the proximate cause. We must, at the outset, bear in mind that this action comes within the Federal Employers Liability Act of April 22, 1908, which in Section 3 provides that contributory negligence of the employee is not a bar to recovery, but that his negligence shall diminish the damages in proportion to the amount of negligence attributable to him. Under this act the railroad company is liable, if its negligence contributes proximately to the injury, no matter how slightly, and no matter how great may be the negligence of the employee. It is only when the employee's act is the sole cause of the injury that the railroad company is absolved from liability. (Union Pac. R. R. Co. v. Hadley, 246 U. S. 330, 38 Sup. Ct. 318; Grand Trunk W. Ry. Co. v. Lindsay, 233 U. S. 42, 34 Sup. Ct. 581; Pennsylvania Co. v. Cole, 214 Fed. 948, 131 C. C. A. 244; R. Co. v. Niebel, 214 Fed. 952, 131 C. C. A. 248.) If the injury was caused in whole or in part from the company's negligence, the statute cannot be nullified and the recovery defeated by calling the act of the employee the proximate cause of the injury, instead of contributory negligence. (R. Co. v. Campbell, 217 Fed. 518, 133 C. C. A. 370; R. Co. v. Wene, 202

Fed. 887, 121 C. C. A. 245; Grand Trunk W. Ry. Co. v. Lindsay, supra.)   There may be more than one proximate cause of an injury (Hellan v. Lumber Company, 94 Wash. 683; 163 Pac. 9), and the negligence of the employee, even if one of the proximate causes, would no more defeat the action under this statute, than would an efficiently concurring negligence of a third person in the ordinary common law action, in which case it is well settled that both parties may be held responsible, even though the negligence of one arises subsequent to that of another.   (29 Cyc. 497; King v. Steel Co., 177 Ind. 201, 96 N. E. 337; Garlock v. R. R. Co., 55 Colo. 146, 133 Pac. 1103; Merrill v. Gas & Elec. Co., 158 Cal. 499, 111 Pac. 534, 31 L. R. A. N. S. 559.)   In the case at bar, the negligent acts of the deceased, if any, at the time of stopping his motor car, came subsequent to the commencement of the negligence of the defendant, and might be termed an intervening agency.   But an intervening agency, in order to supercede the original negligence of the defendant as the sole efficient legal cause, must be independent of the latter and not set in motion thereby, and must be in and of itself sufficient to produce the injury. (Lemos v. Madden, et al, 200 Pac. 791, recently decided by this court.   22 R. C. L. 133, 134.)   We do not believe that it can be said that the accident of the decedent with the motor car was entirely independent of the negligence of the defendant.   The train was the immediate instrument of death; its rapid approach was bound, in the nature of things, to have more or less immediate, direct influence upon the deceased in his attempt to escape.   And the situation here is somewhat akin to that found in Union Pac. R. Co. v. Hadley, supra, where it was claimed that the negligence of the plaintiff was the proximate cause of the injury, and where the court said:

"But if the railroad company was negligent, it was negligent at the very moment of its final act.   It ran one train into another when, if it had done its duty, neither train would have been at that place.   Its conduct was as near to the result as that of Cradit.   We do not mean that the

negligence of Cradit was not contributory. We must look at the situation as a practical unit rather than inquire into a purely logical priority. But even if Cradit's negligence should be deemed the logical test, it would be emptying the statute of its meaning to say that his death did not 'result in part from the negligence of any of the employees' of the road.''

In the case at bar the motor car under which the deceased was pinned was about 900 to 990 feet beyond the point where the engineer could see it. The train was stopped within about 1000 feet after the engineer saw the car, and the jury could have found that if the speed of the train had been such as, in their judgment, ordinary care under the circumstances required, the deceased might have escaped being killed. Under such circumstances, it is ordinarily, as we think it was in this case, for the jury to say as to whether the negligent speed of the train is the proximate cause, or one of the proximate causes of the injury. (33 Cyc. 902, 1312. R. R. Co. v. Mochell, 193 Ill. 208, 61 N. E. 1023; Crowley v. Ry. Co., 65 Ia. 658, 20 N. W. 467; Pasternak v. Ry. Co., 170 Mo. App. 663, 157 S. W. 109; Texas Elec. Ry. v. Whitmore (Tex. Civ. App.) 222 S. W. 644; Traction Co. v. Apple, 34 App. (D. C.) 559; Evans v. Ry. Co., 92 S. C. 77, 75 S. E. 275; Butler v. Ry. Co., 90 S. C. 273, 73 S. E. 185.)

3. Counsel for defendant, however, contend that the accident to plaintiff in being pinned under the motor car was so unusual and extraordinary that it could not have been reasonably anticipated, and they appeal to the oft-stated rule that an injury, in order to be attributable to an act of negligence as the proximate cause must be the natural and probable result thereof and such as to have been reasonably anticipated. Anticipation of some injury is a necessary element in establishing negligence, (R. Co. v. Wright, 183 Ky. 634, 210 S. W. 184), and according to the prevailing rule (though contested in some jurisdictions, e. g. Ry. Co. v. Whitehurst, supra) it is also a necessary element in establishing the proximate cause of an injury.

(22 R. C. L. 120.) But it is also, further, the universally accepted doctrine, from which no court, has dissented, that it is not necessary that the precise injury, or the particular manner or conditions under which it occurred, should have been anticipated, and all that is necessary is that an injury of some character could have been reasonably anticipated. (29 Cyc. 495; 22 R. C. L. 125.) In Ry. Co. v. Carlin, 111 Fed. 777, 49 C. C. A. 605, the court said:

"It must be conceded that the injury for which the action is brought occurred in an extraordinary and unusual manner. Just such an occurrance was not to be anticipated. * * * The fact that it happened to cause the injury in a manner so unusual that it was not to be expected cannot prevent the act from being negligent when it was likely to cause injury in a way that might be foreseen."

In the case of Walmsley v. Tel. Ass'n., 102 Kans. 139, 169 Pac. 197, the injury occurred through an accidental discharge of a gun, under peculiar circumstances which could not have been anticipated. The court said:

"That somebody would be shot through defendant's negligence would not have been anticipated. But the law does not say that if the particular injury arising from the negligence cannot be anticipated, a recovery cannot be had. That some damage, some injury would probably arise from the existing negligence, and that it could reasonably have been anticipated is all that the law requires to justify a recovery."

The numerous cases cited in the notes to 29 Cyc. 495, as brought down to date, illustrate in various ways the application of the principle there stated, and also show that the application thereof is not entirely uniform. (See Lawrence v. Ice Co., 119 Mo. App. 316, 330, 93 S. W. 897.) But it is unnecessary to say what this court would do in a case where consequences of an unusual character were involved, different from those existing in this case. While the particular injury occurring in this case might not have been reasonably anticipated, we think the jury were warranted in finding that it was not beyond the field of reasonable anticipa-

tion that injury might occur to the occupants of the motor car. It would not, we think, make any difference in this case, in determining the proximate cause of the injury, whether the plaintiff was negligent in the management of the motor car, whereby he was pinned beneath it, or whether it was a pure accident for which neither party was responsible; if he was guilty of negligence, that would in this case only reduce the amount of his damages. Accidents of a similar nature have frequently been passed on by the courts. (Christenson v. Ry. Co., supra; Coel v. Traction Co., 147 Wisc. 229, 133 N. W. 23; Pasternak v. Ry. Co., supra; McDermott v. R. R. Co., 82 Mo. 285; Crowley v. Ry. Co., supra), are railroad cases, the first two expressly holding that an accident, such as happened in the case at bar, is within the field of reasonable anticipation. In the Pasternak case the brake on a motor car failed to work. Other cases of accidents, where the plaintiff stumbled and fell, but not in railroad cases, are Winchel v. Goodyear, 126 Wisc. 271; 105 N. W. 824; Davis v. Lumber Co., 164 Ind. 413, 73 N. E. 899; Hartman v. Envelope Co., 127 N. Y. S. 187; Ziehr v. Paper Co., 28 Ohio Cir. Ct. Rep. 342; Harvel v. Lumber Co., 154 N. C. 254, 70 S. E. 389; Aaspenlaub v. Ellis, 43 Ind. App. 163, 72 N. E. 527; Music v. Packing Co., 58 Mo. App. 322; Finkle v. Lumber Co., 132 N. Y. S. 1038; Bales v. McConnell, 27 Okl. 407, 112 Pac. 978; Goe v. R. Co., 30 Wash. 654, 71 Pac. 182; McKean v. Chappell, 56 Wash. 690, 106 Pac. 184; Fegley v. Rubber Co., 231 Pa. St. 446, 80 Atl. 870. Many others might be cited. In the first three of these cases the court specifically discussed the element of reasonable anticipation; the others base the decision on the point that defendant's negligence was an efficiently concurring cause of the injury. In the case of Coel v. Traction Co., supra, the court said:

"The argument to support the alleged absence of the element of reasonable anticipation is based on the erroneous assumption that it was necessary that defendant should anticipate that *plaintiff* would *stumble* and come in contact with the car in that manner. Counsel say: 'To hold the

motorman to the doctrine of reasonable anticipation under the facts of this case it must be said that he should reasonably anticipate the sudden stumbling of this plaintiff resulting in the collision', and again: 'Nor can it be said that an ordinary prudent man should reasonably anticipate that another will stumble and so be injured.' These extracts are fair samples of the argument on this question. The element of reasonable anticipation is not limited to such a narrow field. It is not necessary that an ordinarily prudent man ought reasonably to have anticipated the particular injury to the plaintiff or to any particular person. It is sufficient that such a man ought reasonably to have anticipated that his conduct might probably cause some injury to another. * * * Hence it was within the field of reasonable anticipation that some one at some time might stumble or fall, or in some other natural manner suddenly come in front of a moving car as it passed a standing one discharging passengers.''

In the case at bar, the field of reasonable anticipation should not, we think, have been confined to the exact spot where the injury occurred. Much of the argument used when we discussed the question of negligence is applicable here, but we shall not repeat it. The train, even travelling at the rate of 20 miles an hour, would, unless checked, go nearly 30 feet in a second, or 300 feet in ten seconds, and 600 feet in 20 seconds. When the engineer knew that the motor car was just ahead of him, it would be no unreasonable requirement for him to anticipate that it might be in the cut, and that it might be, when he would first see it, only 50 feet or 500 feet ahead of him; yet in each of these cases it cannot be said as a matter of law that death of the motorman would not have been within the field of reasonable anticipation, because it is doubtful in such case, even if decedent had not fallen, that sufficient time would have been given to get out of the way of the train with the motor car. And when this is so, this court cannot be asked to hold that the jury were not justified in holding that the engineer should have anticipated injury when the car happened to be

only 400 feet further away, that is to say, about 900 feet beyond the point where he could first see it. Suddenly coming upon the decedent might well cause the latter to become confused and that an accident such as happened came to pass is not, under the circumstances, so surprising and extraordinary that we can say, as a matter of law, that the jury were justified in their holding that this, too, came within the reasonable field of anticipation of the engineer, notwithstanding the evidence as to the usual rate at which a motor car travels; for they were the judges of the weight to be attached thereto. The engineer had within his control a moving force that must inevitably result in death should it run over a living being; the care as well as reasonable foresight required of him should necessarily be commensurate with the knowledge thereof; and the jury, having the right to find, as stated before, that he should have reasonably anticipated that he might catch up with the motor car close to the point where he could first see it, had, we think, the further right to find that, with his death-dealing instrument, he should not have taken the chance of not meeting up with it until it had reached a point perhaps beyond the zone of danger. While this question on the element of reasonable anticipation is close, we think, after most painstaking consideration and mature deliberation, that it was properly submitted to the jury.

4. The plaintiff assigns as cross-error the refusal of the court to give the following instruction:

"You are instructed that one who acts in a sudden emergency is not held to the same degree of care for his own safety that would be required of him in the absence of such emergency, and in this case in determining whether or not the deceased was guilty of negligence in not abandoning the gasoline motor and running away from the danger, you may take into consideration all of the facts and circumstances attending the transaction as shown by the evidence. Bearing in mind that the burden of proving contributory negligence is upon the defendant in this case and that contributory negligence, if established, is not a defense, but

simply operates to diminish the amount of plaintiff's recovery.''

The court properly instructed the jury, in other instructions, on the burden of proving contributory negligence, and the effect of it in the action, so that no complaint is made as to that point. We are cited to the rule laid down in 29 Cyc. 521, wherein it is said that when one is required to act suddenly and in the face of imminent danger, he is not required to exercise the same degree of care, as at other times. But it is well settled that this rule applies only where the person injured was placed in a position of sudden peril without his own fault. (Thompson on Neg. § 194; Noyes v. R. R. Co. (Cal.) 24 Pac. 927, 928; 29 Cyc. 523; Dobbins v. R. Co., (S. C.) 93 S. E. 932; Birmingham Ry. & L. Co. v. Fox, 174 Ala. 657, 56 So. 1013; Atkins v. Transp. Co., 79 Ill. App. 19; R. Co. v. Cooper, 109 Tenn. 308, 70 S. W. 72; Berg v. Milwaukee, 83 Wis. 599; 53 N. W. 890; Baltzer v. R. Co., 83 Wis. 459, 53 N. W. 885; cases collated in 37 L. R. A. (N. S.) 54.) In R. Co. v. Cooper, supra, the court held that it was error to give an instruction relating to emergencies which did not embody the foregoing modification. The instruction asked in the case at bar clearly does not contain it. The last clause thereof can only relate to the effect of contributory negligence on the action as a whole. The difficulty in this case is that the evidence shows that the deceased was warned not to travel ahead of the train, but that he did so nevertheless, and failed to watch for the train. This, if true, was clearly negligent, and such negligence pervaded the whole incident, and would be distinct and separate from the negligence, if any, in connection with the stopping of the motor car. We cannot, therefore, say that the emergency, if any, was brought about without the fault of the deceased, and to have given the instruction as asked would, we think, under the circumstances have been clearly misleading.

5. Plaintiff also assigns as cross-error the giving of instructions 9 and 10, which state in substance that if the deceased knew that the passenger train was due and was

warned not to travel ahead of it, and if he nevertheless did so but failed to take due care for his own safety, then that he would be negligent. Counsel for plaintiff contend that when the engineer was warned that the motor car was ahead, such negligence of the deceased was eliminated from the case. They cite no cases in support of such contention. That it is unsound, appears, we think, sufficiently from what has been previously said.

We find no error in the record, and the judgment herein is accordingly affirmed.

*Affirmed.*

POTTER, C. J., and KIMBALL, J., concur.

ON PETITION FOR REHEARING

BLUMÉ, Justice.

Counsel for defendant have filed petition for rehearing herein, alleging in general that we erred in the rule of law applied in the case. Other exceptions taken we shall mention in the course of the opinion. It is apparent, judging from the arguments of counsel, that we have not made our position clear in many respects, and have, perhaps, not sufficiently covered the grounds taken by defendant. On account of the importance of the principles involved in this case, and in justice to the learned and able counsel for defendant, we shall at greater length than we would ordinarily do, but as briefly as possible go over the main contentions herein made. Much of what we shall say would have been said in the original opinion, but for the fact that we thought we had covered the subject sufficiently and did not desire to make the opinion too long.

Counsel think that we have not considered the authorities cited by them, and now particularly again refer to Keefe v. Ry. Co., 92 Ia. 182, 60 N. W. 503; Louisville Ry. Co. v. Jolly (Ky.) 90 S. W. 797; Vezacchero v. Rhode Island Co., 26 R. I. 392, 59 Atl. 105; Southern Ry. Co. v. Gray, 241 U. S. 333; Cohen v. Ry. Co., 14 Nev. 376, and one other case hereinafter mentioned. We had read the

authorities cited. Without attempting here to analyze the above cases separately, we may say in general that they fairly support the doctrine that ordinarily an engineer does not need to put his train under control, and that he is entitled to indulge in the presumption of a clear track. We have no fault to find with that doctrine and gave it our approval in the original opinion. The Vezacchero case lays down the rule that only sufficient time need be given for the persons on the track to get out of the way, and counsel contends that this rule should be applied here. We also gave that rule our approval as applied in the ordinary case where section men are on the track. The Jolly case presents many facts very similar to those in the case at bar, and counsel in their first argument herein contended that the case should control here. But there was absent in that case the one vital factor which controls this case; namely, the warning given of the peril of deceased, and that factor was not present in any of the cases cited by counsel for defendant, and we cannot, therefore, see how those cases can be said in any way to be applicable to, or be decisive of, the case at bar.

We stated the rule of law in this case to be that the engineer among other things, when he received the warning, should have put his train under reasonable control, leaving the fact as to whether or not he had done so, for the jury to determine. We cited in support of our holding the cases of R. Co. v. Evans, 170 Ky. 536, 186 S. W. 173, and Ry. Co. v. Jones' Admr's., 171 Ky. 11, 186 S. W. 897. Counsel for defendant contend that these cases do not apply, pointing to the fact that in both of them the engineer completely ignored the warning there given and that in one of them the person injured was not negligent. We do not think that sufficient to distinguish the cases. Contributory negligence on the part of the injured person can neither establish the negligence of a defendant, nor freedom therefrom. Further, to partially ignore a warning may be just as fatal and result in just as great detriment as to entirely ignore it; hence the principle cannot be shaken by that argument.

We have found no other cases than those above cited exactly in point. We think, however, that they find some support in cases arising out of analagous situations, namely, where the injured person is killed or injured at a place much frequented and where his presence, therefore, was to be anticipated. Both classes of cases are based on knowledge of danger. (See cases collated in 11 L. R. A. (N. S.) 352.) In the case of Missouri Pac. Ry. Co. v. Hansen, 48 Nebr. 232, 66 N. W. 1105, cited by counsel for defendant, the deceased was a trespasser injured while walking on the track in a region outside of the city limits, not shown to have been unusually heavily settled. The court held that a speed of 25 miles could not be held to be negligent. We think it is apparent that much greater knowledge of the presence on the track of the deceased in the case at bar was conveyed to defendant's engineer. In addition thereto, the deceased in this case was not a trespasser. In the case of Haley v. Ry. Co., 197 Mo. 15, 93 S. W. 1120, 114 A. S. R. 743, the court announced the following rule:

"It is the duty of a railroad company running its train through a street of a populous city to use ordinary care to regulate the speed of the train so as not to injure anyone, and failure to use such care is negligence at common law."

In Northern Alabama Ry. Co. v. Guttery, 189 Ala. 604, 66 So. 580, the syllabus on this question is as follows:

"Where trainmen know that a track at a certain point is commonly used by pedestrians, it is their duty to keep their train in control at that place so that they may avoid injuring pedestrians after discovering them upon the track."

In the case of Cincinnati etc. Ry. Co. v. Carter, 180 Ky. 765, 203 S. W. 740, the court seems to lay down the rule that in all cases where there is a lookout duty due to any person, the duty of the railroad company is as follows:

"In such cases, the company owes to persons thus using its tracks the duty to give warning of the approach of the train, to keep a lookout, and to operate its train at such a

speed as may enable the engineer to stop it before injury has been inflicted.''

. Similar language was used in Illinois Central R. R. Co. v. Murphy, 123 Ky. 787, 97 S. W. 729, 11 L. R. A. (N. S.) 352, and in Blackburn v. Ry. & R. N. Co. (La.) 80 So. 708. (See also Georgia R. Co. v. Cramer, 106 Ga. 206, 31 S. E. 759; Shaw v. R. Co., 127 Ga. 8, 55 S. E. 960.)

So we think that the rule applied in the case at bar is amply sustained by both reason as well as authority. We believe, however, that the exception taken by counsel for defendant to the phraseology, such as used in the Jones case, that the control must be such as to be able to stop the train if necessity appears, or, as expressed by some of the other cases above cited, that the train must be able to be stopped before injury occurs, is well taken. While we do not know that the courts meant to so hold, the language may be construed to mean that that duty exists as a matter of law. We think that the only requirement that should be made as a matter of law of an engineer in a case like that at bar is to keep a look-out, give warning, and put the train under such control as a reasonably prudent person would have done under like circumstances, leaving it to the jury to say, unless the case warrants the court to do otherwise, as to whether or not the rate of speed which would make it impossible to prevent injury, after actually and definitely discovering the dangerous position of the persons in peril, was in fact negligent. (See Illinois Central R. R. Co. v. Murphy, supra; Shaw v. R. Co., supra; Georgia R. Co. v. Cramer, supra; Tober v. R. Co., 210 Mich. 129, 177 N. W. 385.) We applied the rule as so construed in the case at bar.

Counsel fear that this rule would seriously interfere with railroad operation. But we do not think so. We cannot deviate from the wholesome doctrine that the law has a high regard for human life, and must apply a rule of law that will effectuate that doctrine. The rule announced by us does not apply unless the engineer has reason to believe that persons on the track ahead of him are in peril; in all other cases he is entitled to indulge in the presumption of

a clear track, and does not need to put his train under control further than to give men, whom he has reason to believe to be ahead of him, sufficient time to get out of his way. We do not think that such a doctrine puts too great a burden upon railroad operation.

Counsel claim that under the holding of this court the engineer was required to anticipate the negligence of Sweeney as well as unusual and extraordinary conditions. But this is a very inexact deduction. We hold that, in order to make defendant responsible, it should only be able to anticipate *some* injury from its acts; that the jury were justified in finding that with the conditions actually confronting the engineer, some injury might reasonably be anticipated by him, unless he reduced the speed so that it would not be negligent; that as to whether he did so was a question for the jury; that since the jury found that he did not, but was negligent, they were further justified in holding that the injuries in question were within the reasonable field of anticipation, or, as expressed generally, that these injuries were the natural and proximate result of the negligence, for which the defendant was liable although occurring under unusual circumstances. Let us briefly, even at the risk of repeating some of the things stated in the original opinion, make our position clearer. In the first place, the situation as it was at the time when the engineer received the note ''motor car just ahead,'' could clearly be found by the jury to have been fraught with peril and danger. The fact that the note could be construed to mean that the motor car was just ahead in the cut, the obstruction to vision, the noise of the motor car making hearing difficult, the train running out of time, the possible, perhaps probable, sense of security of the men on the motor car ahead and other circumstances indicated in the original opinion, warranted them in doing so. And what would seem very persuasive, the station agent of the defendant thought so, and demonstrated that by the very act of handing the note to the engineer; the latter thought so, and showed that fact by sounding the whistle and reducing the speed. It is clear,

therefore, that, in face of all this, we could not be asked to hold the fact to be otherwise. Counsel, accordingly, would probably agree with us, that if the engineer had paid no attention whatever to the danger warning and had entirely ignored it, that then he should have reasonably anticipated some injury, and that then his conduct would rightly have been considered reckless, and negligent, without regard to the conduct of the deceased. It is, therefore, reasonable to hold that he should, under the circumstances, put his train under control. This in fact he did, to the extent of reducing the speed to about 20 miles an hour, and the only point remaining is whether that was sufficient as a matter of law, or whether the jury had a right to pass upon that question. As we stated before, to ignore a duty partially may be just as fatal, just as deadly as to ignore it entirely. Counsel think that no danger whatever was left after such reduction of speed, and the circumstances to the contrary are not exceedingly strong. But we think that reasonable minds might come to a different conclusion on that question. And the case was, therefore, properly submitted to the jury.

When, accordingly, the jury found, as they evidently did, that to run the train at the rate of 20 miles an hour had a tendency and was likely to result in some kind of injury, and that this constituted negligence, then the fact that the injury happened under peculiar circumstances, such as could not have been reasonably anticipated, would not necessarily make any difference. (See cases cited in the original opinion.) Counsel attempt to distinguish some of the cited cases from the case at bar. The facts in those cases, it is true, are different from the facts in the case at bar, but the rule therein stated is applicable nevertheless, because based on or consonant with the principle that the law will not permit a defendant to excuse himself from the natural and proximate consequences of his wrong. Where negligence has once been found to exist, the defendant is liable for all the natural consequences proximately resulting therefrom without the intervention of an efficient intervening cause, although the injuries actually resulting could not have

been foreseen. (Galveston etc. Ry. Co. v. Cook, (Tex. Civ. App.) 214 S. W. 539; San Antonio & A. P. Ry. Co. v. Behne (Tex. Civ. App.) 198 S. W. 680; Christianson v. Ry. Co., 67 Minn. 94, 69 N. W. 640; Ry. Co. v. Parry, 67 Kans. 515, 73 Pac. 105; Mesa City v. Lesueur (Ariz.) 190 Pac. 576; Salem v. R. R. Co., 75 Or. 200, 146 Pac. 819; The Pullman Palace Car Co. v. Laak, 143 Ill. 242; Hellan v. Supply Laundry Co., 94 Wash. 683, 163 Pac. 9; Stevens v. Dudley, 56 Vt. 158; Hill v. Winsor, 118 Mass. 251.) The consequences of negligence are almost invariably surprises. (Clifford v. Railroad, 9 Colo. 338, 12 Pac. 219; Colorado Mfg. & Inv. Co. v. Gisconni, 55 Colo. 540, 136 Pac. 1039. Stevens v. Dudley, supra.) A contrary doctrine would give every wrong doer a chance to escape by showing that the consequences could not reasonably have been anticipated, and would often lead to most unjust results, but under the law as laid down by the courts, so long as the results are natural and proximate, or, as otherwise expressed, not so unnatural and remote as to be beyond the reasonable field of anticipation, the defendant guilty of negligence is held responsible. This question is generally, as we held it to be in this case, for the jury to decide. With the question of negligence of the party injured we shall deal separately.

Counsel for defendant have conceded from the beginning—a fact which we fully understood and which, in justice to them, we should, probably, have distinctly stated—that if defendant was guilty of any negligence proximately contributing to the injury, then in view of the employer's liability act, a verdict for plaintiff was properly found. But, in addition to the contention that defendant was not negligent, of which we have already disposed, they further vigorously insist that the acts of deceased became the sole proximate, the sole producing cause, because the decedent was reckless and negligent and that such negligence was not to be anticipated by defendant. We have, perhaps, not heretofore sufficiently treated this point of view. There are at least two conclusive answers to this contention:— First, in determining as to whether or not the acts of de-

cedent constituted the sole proximate cause of the injury, the acts of both parties must be considered; it must appear not only that decedent was negligent, but also that the defendant was not guilty of negligence contributing to the injury. And we have already stated that the jury were justified in finding the defendant negligent. As to whether this negligence contributed to the injury was also for them to decide. Hence the decedent's negligence is not sufficient to establish counsel's contention. We do not suppose that counsel would dispute the proposition that the mere fact that decedent was negligent does not necessarily prove, in a case like this, that defendant was not negligent. Negligence consists of a violation of duty owing by one to another. Whether or not defendant violated such duty can evidently not be established in a case like this by showing merely that decedent was also guilty of a violation of duty. This seems to be a truism. Further, it is true that defendant is not required to anticipate the negligence of the injured party, and he is not held responsible therefor, even under the employers liability act. Because of this fact, recovery is barred in a common law action whenever such negligence commonly called contributory, is established. But if we call it the *sole* proximate cause, when shown, then we can conceive of no case where, when such negligence of the injured party is established, a recovery could be had under the employers liability act, and the law would be but a phantom and a delusion. Hence the contention must, of course, be unsound. To say that a defendant is not required to anticipate another's negligence is, we think, a different proposition from saying that a man is responsible for the natural and proximate consequences of his wrong, as he is held to be under the employers liability act. But whether it is or not, or whether the latter proposition should in a case like this be considered a modification of the former, is to no purpose. The very reason of the act was to get away from the common law rule referred to, that contributory negligence, or, if it pleases, the inability to anticipate the injured party's negligence, bars recovery, and intends

to make a defendant responsible for the natural and prox-
imate consequences of his wrong, and no further, though
these consequences could not have happened except only
in combination with or because of the negligence of the
injured party. Second:—We cannot agree with counsel,
as we indicated in the original opinion, as to the nature of
the acts of deceased in connection with the motor car. The
moment no doubt was tense, as is shown by the circum-
stances, including the exclamation of decedent, and the fact
that the Mexicans jumped instantly. Decedent no doubt
was impelled by emotions to save the motor car and himself
from being discharged; but a train moving at 20 miles an
hour compelled instant action or meant, perhaps, death;
that he, under the excitement of the moment, should pull
the lever of the motor car the wrong way, is not entirely
surprising, and cannot be considered so unusual as to be
beyond the reasonable field of anticipation, even though, as
counsel say, section men do not usually ''lose their heads.''
We do not think that we should judge too harshly of con-
duct under such circumstances, and do not believe it to be
consonant with humane feelings to declare such conduct, as
a matter of law, reckless and the sole proximate cause of
the injury. (See Dickinson v. Granberry (Okl.) 174 Pac.
776, where three Mexicans escaped but the section foreman
was killed.) We think it was for the jury to say whether
this conduct of deceased constituted contributory negli-
gence, or not, and to what extent, if any, it contributed to,
or brought about the injury, and if they found that he then
acted with ordinary care, then, it would seem, they could
have found for plaintiff even under the rule of law contend-
ed for by defendant, namely, under the rule that time
enough should have been given to deceased to get off the
track while in the exercise of ordinary care. The preceding
negligence, if any, of being there at all on account of not
heeding the warning not to go, should not, we think, be de-
terminative of that point, for if it were, the rule itself, or for
that matter, any rule relating to the care of defendant what-
ever, would be of no value to a person situated as was the de-

ceased, and this is the view which the lower court doubtless took in view of instruction No. 14.

Counsel for defendant take exception to what we said on the subject of the non-production of the speed recorder. We do not believe, that anything we said could be construed as affecting the rule of the burden of proof. Inasmuch, however, as the point was not necessary to be decided in the case, we deem it best, in view of the fact that the point may in the future arise more directly, not to decide as to what, if any, conclusions the jury had a right to draw from the circumstances mentioned, and the original opinion is modified accordingly.

We find no reason why a rehearing should be granted and the same is accordingly denied.

*Rehearing Denied.*

POTTER, C. J. and KIMBALL, J., concur.